TIMOTHY J. YOO (SBN 155531)
EVE H. KARASIK (SBN 155356)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: tjy@lnbyb.com, ehk@lnbyb.com, jyo@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:17-bk-17292-VZ |
| CORNERSTONE, APPAREL, INC., | Chapter 11 |
| Debtor. | **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO HONOR CERTAIN PREPETITION OBLIGATIONS TO CUSTOMERS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | [Omnibus Declaration of Tae Yi Filed Concurrently Herewith] |
| | Date:          June 20, 2017
Time:          1:30 p.m.
Courtroom:   1368
Location:      255 E. Temple Street
                     Los Angeles, California |

1

# SUMMARY

Pursuant to Local Bankruptcy Rules 2081-1(a)(7) and 9075-1, 11 U.S.C. §§ 105(a), 363(c), 507(a)(7), 549, and 1108, and Rule 6003 of the Federal Rules of Bankruptcy Procedure, Cornerstone Apparel, Inc. d/b/a Papaya Clothing, a California corporation and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby moves, on an emergency basis (the "Motion"), for the entry of an order authorizing the Debtor, in its discretion, to honor certain prepetition customer gift cards and merchandise credits (collectively, the "Customer Programs") in the ordinary course of business.

The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 15, 2017 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a retailer doing business as Papaya Clothing offering stylish clothing at reasonable prices to its fashion-savvy customers in the 16 to 25 year old age range. The Debtor currently owns and operates over 80 retail stores located shopping centers and malls throughout the United States (the "Retail Stores"). The Debtor is headquartered in Los Angeles, California, and currently employs a workforce of approximately 1,300 employees.

The Debtor submits that the discretion to honor the Customer Programs is essential to the Debtor's maintenance of positive customer relations, as a failure to honor existing Customer Programs is certain to detrimentally affect customer goodwill. If the Debtor is not authorized to honor Customer Programs in its discretion, the Debtor's ability to successfully reorganize could be seriously jeopardized.

Accordingly, by this Motion, the Debtor requests authority to honor all prepetition obligations in its discretion in connection with the Customer Programs and to treat all Customer Programs (and the goods and services they represent) made by or on behalf of customers in the ordinary course of business in the same manner as the Debtor treated such Customer Programs prior to the Debtor's bankruptcy filing in the exercise of the Debtor's business judgment and in the Debtor's discretion.

**ADDITIONAL INFORMATION**

This Motion is based upon Local Bankruptcy Rules 2081-1(a)(7) and 9075-1, §§ 105(a), 363(c), 507(a)(7), 549, and 1108, and Rule 6003 of the Federal Rules of Bankruptcy Procedure 366 and Rule 6003 of the Federal Rules of Bankruptcy Procedure, this Motion, the supporting Memorandum of Points and Authorities, the Omnibus Declaration of Tae Yi filed concurrently herewith, the arguments and statements of counsel made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor has served the Motion upon the Office of the United States Trustee, the 20 largest unsecured creditors of the Debtor, and parties requesting special notice via overnight mail. Hard copies of this Motion are available upon request to the Debtor's proposed counsel whose contact information is located on the upper-left hand corner of this Motion. Upon obtaining a hearing date/time from the Court, the Debtor will serve notice of the hearing on this Motion via overnight mail.

**WHEREFORE**, the Debtor respectfully requests that this Court hold an emergency hearing on the Motion and issue an order:

(1)     affirming the adequacy of the notice given;

(2)     granting the Motion in its entirety;

(3)     granting the Debtor authority, in the exercise of its business judgment and in its discretion, to treat all Customer Programs (and the goods and services they represent) made by or on behalf of customers in the ordinary course of business in the same manner as the Debtor treated such Customer Programs prior to the filing of the Chapter 11 case, including honoring any prepetition obligations arising under the Customer Programs; and

/ / /

/ / /

/ / /

/ / /

/ / /

(4)   granting such other and further relief as the Court deems just and proper under the circumstances.

Dated:  June 15, 2017           CORNERSTONE APPAREL, INC.

By:   */s/ Juliet Y. Oh*
    TIMOTHY J. YOO
    EVE H. KARASIK
    JULIET Y. OH
    LEVENE, NEALE, BENDER, YOO
      & BRILL L.L.P.
    Proposed Attorneys for Debtor and
    Debtor in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Background.**

1. On June 15, 2017 (the "Petition Date"), Cornerstone Apparel, Inc. d/b/a Papaya Clothing, a California corporation and the debtor and debtor- in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. Cornerstone Apparel, Inc. operates a chain of apparel stores under the name Papaya Clothing ("Papaya") that cater to teens, juniors and the "young at heart," and focuses on the 16 to 25 year old age group. Cornerstone has over 80 stores located in malls and shopping centers throughout the United States. The Papaya concept is to provide shoppers with "great price, great service," and an "innovative, upscale and welcoming atmosphere."

3. Cornerstone is based in Commerce, California with a 75,000 square feet headquarters complex, which includes its warehouse and distribution facilities.  The merchandise sold in the Papaya stores is manufactured in the United States, and is housed in Cornerstone's California warehouse where Cornerstone's employees pack and ship the merchandise to the retail locations. Given the ever-changing fashion world, Cornerstone has established a production line that can take a new design from start to finish within a two-week period in order to give the customer an impressive selection of the latest fashions.

4. Cornerstone's ownership and management have over twenty-five years' experience in operating retail clothing business focusing primarily in the junior and petite apparel markets. This ownership and management team is responsible for the prior successes of retailers Everblue Casuals and Career Image. Papaya consistently leads in its retail category in sales per square foot of retail space.

5. The Debtor employs a workforce of approximately of 1,300 employees. In 2016, the Debtor generated annual gross revenues of more than $134 million. The Debtor has no secured

debt.

6. After opening its first retail store approximately 18 years ago in 1999, the Debtor substantially expanded its business operations to encompass a total of over 80 of retail stores throughout the United States by 2017. Approximately, 50 of these new retail stores were opened within the last six (6) years. The expansion effort took a heavy financial toll on the business operations of the Debtor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

7. The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the resulting increased competition, has left Cornerstone with insufficient liquidity to meet all of its financial obligations. While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 80 retail stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining retail stores and identify other ways to decrease operational costs and increase profitability. In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

8. Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores, all of which the Debtor believes will enable it to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

**C.    The Customer Programs.**

9. The Debtor has instituted several customer programs to remain competitive and to enhance its customer base. As of the Petition Date, the Debtor's customer programs (collectively,

the "Customer Programs") consist of the following:

    i.     Merchandise Credits. Merchandise credits arise when a customer purchases a product in the store and later returns the product to the store without a receipt. Rather than provide the customer with a cash refund, the store gives the customer a credit that can be applied, up to the amount of the credit, to purchase goods in the store. (Managers can provide cash refunds for products purchased and returned on the same day.) Customers are given up to 14 days to return the products for exchange or store credit with the proof of purchase (receipts). Once a store credit is issued, a customer has up to six (6) months to redeem the store credit. The Debtor believes that the outstanding obligations on account of unredeemed merchandise credit totals approximately $552,000 as of the Petition Date. Historically, 90% of the merchandise credits are redeemed by customers.

    ii.     Gift Cards. The Debtor sells gift cards in all denominations starting from $5.00 to $600.00 that are valid towards future purchases of product from the Debtor's stores. At present, Gift cards are sold only at the Debtor's stores, and can be redeemed for cash only if the balance is less than $10.00. Gift cards do not expire and cannot be reloaded. The Debtor believes that the outstanding obligations on account of unredeemed Gift Cards total approximately $247,000 as of the Petition Date. Historically, 87% of the gift cards issued are redeemed by customers.

    iii.     Advertising Programs. The Debtor regularly publishes coupons for the public to use at its Retail Stores and for online sales (the "Coupon Program"). The Coupon Program generally consists of promotional specials or discount amounts that enable customers to apply the amount of the coupon against their bill. The Debtor's Coupon Program for its Retail Stores is varied, and includes 10-15% Off coupons on regular priced items featured in mall coupon books year round, 20% Off coupons on any one regular priced item, 10% Off coupons with purchase of $50 or more, and 30% Off coupon on clearance items. In addition, the Debtor provides certain malls with coupons, including $10.00 Off coupons for special mall events as well as $25.00 gift cards provided to malls per the lease agreements for annual events. The Debtor also issues Grand Opening store scratchers for the first 200 customers and Black Friday store scratchers for the first 350 customers, which range from one $100.00 gift card to 100 10% Off coupons. The

1  Debtor also has a Coupon Program for its online customers, which includes coupons for
2  clearance items, flash sales on selected items, new members, birthdays, and free gifts for sales of
3  $55.00 or more, among other benefits.

4      10.      The Debtor seeks authority in its discretion to honor the prepetition obligations
5  incurred under the Customer Programs. The Debtor also seeks authority, in its discretion, to
6  continue to honor the Customer Programs in the ordinary course of business. Such Customer
7  Programs have been provided in the Debtor's ordinary course of business and are essential for the
8  Debtor to stay competitive in its industry.

9      11.      The Debtor is seeking the relief requested herein in order to maintain customer
10 confidence during the Chapter 11 case. Absent such relief, the Debtor's customer relations will be
11 severely and irreparably harmed at a time when customer loyalty and patronage is extremely
12 critical to the Debtor and the Debtor's ability to maximize value for the benefit of all of the parties.

13     **II.**      <u>**DISCUSSION**</u>

14 **A.**      **The Bankruptcy Code Provides the Court with Authority to Honor the Customer**
15      **Programs.**

16 Unless the Court orders otherwise, Bankruptcy Code section 1108 authorizes a debtor in
17 possession "to operate the debtor's business," and section 363(c) of the Bankruptcy Code
18 authorizes the debtor in possession to "enter into transactions and to " use property of the estate
19 in the ordinary course of business without notice and a hearing. 11 U.S.C. §§ 363(c) and 1108.
20 Bankruptcy Code section 105(a) provides in relevant part: "[t]he Court may issue any order,
21 process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11
22 U.S.C. § 105(a). Courts routinely rely upon Bankruptcy Code sections 105(a) and 363(c) for
23 statutory authority to grant relief such as the relief requested in this Motion. *See, e.g.*, *Burchinal*
24 *v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987)
25 (courts have permitted payment of prepetition claims when necessary for rehabilitation); *In re*
26 *Equalnet Commc'ns,* 258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2000) (noting the general
27 proscription of payment of prepetition claims, the court listed examples of exceptions to such
28 rule such as "redemption of prepetition retail coupons in a consumer products case, the honoring

8

of credit card debits, debits and chargebacks in a retail department store case . . . ."; *In re Woodside Group, LLC*, Case No. 08-20682 (Bankr. C.D. Cal. Aug. 27, 2008) [Docket No. 18] (approving stipulation allowing debtors to pay ordinary course providers of goods and services in the ordinary course of business); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) (finding payment of prepetition claims justified where otherwise debtor's rehabilitative effort immediately would be aborted).

Section 507(a)(7) of the Bankruptcy Code also provides authority for the relief requested in the Motion. Bankruptcy Code section 507(a)(7) provides priority treatment for claims of individuals "to the extent of $2,775 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase . . . of property . . . for the personal, family, or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7).

Finally, Bankruptcy Code section 549(a)(2)(B), which governs most postpetition transfers, provides in part that "the trustee may avoid a transfer of property of the estate (1) made after the commencement of the case and, . . . that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(2)(B) (emphasis added). It follows that the Court may authorize certain postpetition payments to satisfy prepetition debts, including the Customer Programs obligations. The statute grants the Court, faced with the intricate facts and circumstances of each case, the discretion to ascertain whether a debtor's business judgment to make a postpetition transfer inures to the benefit of the estate in the particular case, and, if so, to authorize the transfer. *See Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.)*, 37 B.R. 334, 336 n.3 (W.D. Mo.), *appeal dismissed*, 738 F.2d 445 (8th Cir. 1984) ("It would appear proposed transfers could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack under section 549 . . . ").

The Debtor engages in the Customer Programs in the ordinary course of its business. The Debtor's customers are familiar with the Customer Programs and expect the benefits they receive from them. Here, the success of the Debtor's business, and the ability for the Debtor to successfully reorganize and/or to maximize value for creditors is completely dependent upon the

loyalty and confidence of their customers. Any delay in honoring the Customer Programs obligations likely will create customer dissatisfaction and frustration, causing customers to offer their business to the Debtor's competitors.

Further, the Customer Programs, and in particular, the merchandise credits and gift cards, fall squarely within the protection provided for under Bankruptcy Code section 507(a)(7). The customers are individuals and the amounts due the customers under the Customer Programs arise in connection with the purchase of household goods. The Debtor believes the prepetition obligations due to the customers on an individual basis will not exceed the $2,775 per individual priority amount.

At a time when customer loyalty and patronage is critical to the Debtor's reorganization efforts, the Debtor submits that it is entirely necessary, and appropriate, for the Court to issue an order pursuant to Bankruptcy Code sections 105(a), 363(c), 507(a)(7) and 549(a) allowing the Debtor to continue to honor the Customer Programs in these circumstances.

**B.     Necessity for Immediate Relief and Effectiveness of the Order.**

Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition grant . . . (b) a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." F. Rule Bankr. P. 6003. For the reasons discussed herein, if the Debtor is not able to continue its Customer Programs on an uninterrupted basis, it would cause immediate and irreparable harm to the Debtor and its business operations. The Debtors may lose customers and any loss of customers will impact the Debtor's ability to maximize value and/or reorganize. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

Further, to implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing use sale, or lease of property under Bankruptcy Rule 6004(h), to the extent those rules are applicable.

### III. **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that this Court hold an emergency hearing on the Motion and issue an order:

(1) affirming the adequacy of the notice given;

(2) granting the Motion in its entirety;

(3) granting the Debtor authority, in the exercise of its business judgment and in its discretion, to treat all Customer Programs (and the goods and services they represent) made by or on behalf of customers in the ordinary course of business in the same manner as the Debtor treated such Customer Programs prior to the filing of the Chapter 11 case, including honoring any prepetition obligations arising under the Customer Programs; and

(4) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: June 15, 2017            CORNERSTONE APPAREL, INC.

By: */s/ Juliet Y. Oh*
TIMOTHY J. YOO
EVE H. KARASIK
JULIET Y. OH
LEVENE, NEALE, BENDER, YOO
    & BRILL L.L.P.
Proposed Attorneys for Debtor and
Debtor in Possession