TIMOTHY J. YOO (SBN 155531)
EVE H. KARASIK (SBN 155356)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: tjy@lnbyb.com, ehk@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>CORNERSTONE APPAREL, INC.<br>d/b/a Papaya Clothing,<br><br>               Debtor. | Case No. 2:17-bk-17292-VZ<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO IMPLEMENT AND MAINTAIN CASH MANAGEMENT SYSTEM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Omnibus Declaration of Tae Yi Filed Concurrently Herewith]<br><br>Date:         June 20, 2017<br>Time:        1:30 p.m.<br>Courtroom:  1368<br>Location:    255 E. Temple Street<br>                   Los Angeles, California |

## **SUMMARY**

Pursuant to Local Rules 2081-1(a)(9) and 9075-1 for the United States Bankruptcy Court for the Central District of California (the "Local Rules"), 11 U.S.C. § 105, and Rule 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Cornerstone Apparel, Inc. d/b/a Papaya Clothing and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby files this motion (the "Motion"), on an emergency basis, for the entry of an order authorizing the Debtor to implement and maintain the cash management system proposed in the Motion.

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 15, 2017 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a retailer doing business as Papaya Clothing offering stylish clothing at reasonable prices to its fashion-savvy customers in the 16 to 25 year old age range. The Debtor currently owns and operates over 80 retail stores located shopping centers and malls throughout the United States (the "Retail Stores"). The Debtor is headquartered in Los Angeles, California, and currently employs a workforce of approximately 1,300 employees.

Prior to the Petition Date, the Debtor maintained approximately ninety (90) bank accounts at various banks, but primarily at Bank of America. Eighty-five (85) of these bank accounts are depository accounts for the Debtor's individual retail stores and e-commerce shop (collectively, the "Store Depository Accounts"), into which the receipts from customer sales are deposited on a regular (generally daily) basis. The remaining five (5) bank accounts are operating or disbursement accounts which the Debtor utilizes to make disbursements related to operations, office/administrative expenses, merchandise purchasing, store construction costs and other purposes (collectively, the "Pre-Petition Operating Accounts"). A list of the Debtor's pre-petition Store Depository Accounts and Pre-Petition Operating Accounts is attached as **Exhibit "B"** to the Omnibus Declaration of Tae Yi filed concurrently herewith.

Pursuant to the Motion, the Debtor seeks to keep open and maintain the Store Depository Accounts following the Petition Date. All of the store cash receipts and credit card receipts from sales generated at the Debtor's retail stores and e-commerce shop are deposited into the Store Depository Accounts (automatically, in the case of credit card receipts). Although, prior to the Petition Date, the Debtor occasionally made operating disbursements from the Store Depository Accounts, the Debtor will not make any operating disbursements from the Store Depository Accounts post-petition. Rather, all of the funds that are collected in the Store Depository Accounts will be swept on a daily basis into one or more debtor-in-possession operating bank accounts to be established by the Debtor immediately following the Petition Date (collectively, the "DIP Accounts"), from which the Debtor will make all operating disbursements. As a result, all post-petition disbursements made by the Debtor will be made from the DIP Accounts and will be accounted for accordingly.

The Debtor anticipates that it will be opening at least seven (7) DIP Accounts to replace the five (5) Pre-Petition Operating Accounts, to establish one (1) primary operating account from which virtually all of the Debtor's post-petition disbursements will be made, and to establish one (1) account in which the Court-approved utility cash deposits will be maintained.

Authority for the Debtor to maintain and utilize a portion of its existing cash management system along with its new DIP Accounts will, among other things: (i) ensure the uninterrupted receipt of deposits from the Debtor's retail stores and receipts from credit card companies, (ii) minimize the disruption which would result from being forced to redirect these payments, (iii) allow for the fluid continuance of the Debtor's business transactions, including the payment of critical operating expenses, and (iv) assist in the Debtor's smooth transition into Chapter 11.

## ADDITIONAL INFORMATION

This Motion is based upon Local Bankruptcy Rules 2081-1(a)(9) and 9075-1, 11 U.S.C. §105, and the Federal Rules of Bankruptcy Procedure, this Motion and the supporting Memorandum of Points and Authorities, the Omnibus Declaration of Tae Yi (the Debtor's President and Chief Financial Officer) filed concurrently herewith, the arguments and statements

of counsel made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor has served the Motion upon the Office of the United States Trustee, all alleged secured creditors, the 20 largest unsecured creditors of the Debtor, and parties requesting special notice in the Debtor's case via overnight mail.  Hard copies of this Motion are available upon request to proposed counsel for the Debtor, whose contact information is located on the upper-left hand corner of this Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court hold a hearing on the Motion on an emergency basis and enter an order:

(1)     affirming the adequacy of the Notice given herein;

(2)     granting the Motion in its entirety;

(3)     authorizing the Debtor to maintain and keep open the Store Depository Accounts post-petition, with all of the funds in the Store Depository Accounts to be swept into one or more of the DIP Accounts on a daily basis;

(4)     authorizing the Debtor to establish and utilize the DIP Accounts, from which all of the Debtor's post-petition disbursements shall be made, and waiving any requirements for the Debtor to establish additional debtor-in-possession bank accounts (including specifically designated debtor-in-possession accounts for taxes or payroll); and

(5)     granting such other and further relief as the Court deems just and proper under the circumstances.

Dated:  June 15, 2017            CORNERSTONE APPAREL, INC.

By:    */s/ Eve H. Karasik*
         TIMOTHY J. YOO
         EVE H. KARASIK
         JULIET Y. OH
         LEVENE, NEALE, BENDER,
             YOO & BRILL L.L.P.
         Proposed Attorneys for Debtor and
         Debtor in Possession

4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Background.**

1.    On June 15, 2017 (the "Petition Date"), Cornerstone Apparel, Inc. d/b/a Papaya Clothing, a California corporation and the debtor and debtor- in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor operates a chain of apparel stores under the name Papaya Clothing ("Papaya") that cater to teens, juniors and the "young at heart," and focuses on the 16 to 25 year old age group. Cornerstone has over 80 stores located in malls and shopping centers throughout the United States. The Papaya concept is to provide shoppers with "great price, great service," and an "innovative, upscale and welcoming atmosphere."

3.    The Debtor is based in Commerce, California with a 75,000 square feet headquarters complex, which includes its warehouse and distribution facilities. The merchandise sold in the Papaya stores is manufactured in the United States, and is housed in the Debtor's California warehouse where the Debtor's employees pack and ship the merchandise to the retail locations. Given the ever-changing fashion world, the Debtor has established a production line that can take a new design from start to finish within a two-week period in order to give the customer an impressive selection of the latest fashions.

4.    The Debtor's ownership and management have over twenty-five years' experience in operating retail clothing business focusing primarily in the junior and petite apparel markets. This ownership and management team is responsible for the prior successes of retailers Everblue Casuals and Career Image. The Debtor consistently leads in its retail category in sales per square foot of retail space.

5.  The Debtor employs a workforce of approximately of 1,300 employees. In 2016, the Debtor generated annual gross revenues of more than $134 million. The Debtor has no secured debt.

6.  After opening its first retail store approximately 18 years ago in 1999, the Debtor substantially expanded its business operations to encompass a total of over 80 of retail stores throughout the United States by 2017. Approximately, 50 of these new retail stores were opened within the last six (6) years.  The expansion effort took a heavy financial toll on the business operations of the Debtor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

7.  The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the resulting increased competition, has left the Debtor with insufficient liquidity to meet all of its financial obligations. While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 80 retail stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining retail stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

8.  Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores, all of which the Debtor believes will enable it to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

**B.     The Debtor's Existing Cash Management System and Proposed Modifications.**

9.     Prior to the Petition Date, the Debtor maintained approximately ninety (90) bank accounts at various banks, but primarily at Bank of America. Eighty-five (85) of these bank accounts are depository accounts for the Debtor's individual retail stores and e-commerce shop (collectively, the "Store Depository Accounts"), into which the receipts from customer sales are deposited on a regular (generally daily) basis. The remaining five (5) bank accounts are operating or disbursement accounts which the Debtor utilizes to make disbursements related to operations, office/administrative expenses, merchandise purchasing, store construction costs and other purposes (collectively, the "Pre-Petition Operating Accounts"). A list of the Debtor's pre-petition Store Depository Accounts and Pre-Petition Operating Accounts is attached as **Exhibit "B"** to the Omnibus Declaration of Tae Yi filed concurrently herewith.

10.    All of the store cash receipts and credit card receipts from sales generated at the Debtor's retail stores and e-commerce shop are deposited into the Store Depository Accounts (automatically, in the case of credit card receipts). Prior to the Petition Date, the Debtor occasionally made store-level operating disbursements from the applicable Store Depository Account(s).

11.    Pursuant to this Motion, the Debtor seeks to keep open and maintain the Store Depository Accounts following the Petition Date. The Debtor will not make any operating disbursements from the Store Depository Accounts post-petition. Rather, all of the funds that are collected in the Store Depository Accounts will be swept on a daily basis into one or more debtor-in-possession operating bank accounts to be established by the Debtor immediately following the Petition Date (collectively, the "DIP Accounts"), from which the Debtor will make all operating disbursements. As a result, all post-petition disbursements made by the Debtor will be made from the DIP Accounts and will be accounted for accordingly.

12.    The Debtor anticipates that it will be opening at least seven (7) DIP Accounts to replace the five (5) Pre-Petition Operating Accounts, to establish one (1) primary operating account

from which virtually all of the Debtor's post-petition disbursements will be made, and to establish one (1) account in which the Court-approved utility cash deposits will be maintained.[1]

## II.

## **DISCUSSION**

Section 105(a) of the Bankruptcy Code provides:

> "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11 U.S.C. § 105(a).

All of the relief requested in this Motion is within the Court's authority to grant at its discretion. The Debtor respectfully requests that the Court exercise its discretion to grant the relief requested herein.

**A.    The Debtor Should Be Granted Authority To Maintain The Pre-Petition Store Depository Accounts.**

The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of Chapter 11 bankruptcy cases. These guidelines require Chapter 11 debtors to, among other things, (i) close all existing bank accounts, and (ii) open a minimum of three new debtor-in-possession bank accounts under the debtor's name as a debtor-in-possession (general, payroll and tax) at an approved depository, with all disbursements to be made out of one of these debtor-in-possession accounts.

The Debtor seeks a waiver of the United States Trustee's requirement that all of the Debtor's pre-petition bank accounts be closed and request that certain of its bank accounts remain open in accordance with the Court's order on this Motion. If the requirement to close all

---

[1] Concurrently herewith, the Debtor has filed an emergency motion seeking Court authority to set aside cash deposits for the benefit of the Debtor's utility companies in accordance with 11 U.S.C § 366 (which utility deposits are proposed to be maintained in a segregated DIP Account).

8

pre-petition bank accounts is enforced in the Debtor's case, such requirement would cause a significant disruption in the Debtor's collection of cash receipts from sales at the Debtor's retail stores and, more significantly, credit card receipts from sales at the Debtor's retail stores and e-commerce shop (which are automatically deposited into the Debtor's Store Depository Accounts), and would significantly impair the Debtor's efforts to maintain business operations and preserve and maximize the value of the Debtor's assets. Indeed, as explained above, the Debtor's bank accounts comprise an established cash management system that the Debtor needs to maintain in order to ensure smooth collections and disbursements in the ordinary course.

Courts have acknowledged that a bankruptcy court has the discretionary authority to allow the continued use of existing pre-petition bank accounts. 11 U.S.C. § 105(a); *See*, *In re Pathmark Stores. Inc. et al.*, Case No. 00-02963(JJF) (D. Del. July 13, 2000); *In re Safety-Kleen Corp.*, Case No. 00-02303(PJW) (Bankr. D. Del. June 13, 2000); *In re Eagle Food Centers, Inc.*, Case No. 00-01311(RRN) (D. Del. March 2, 2000); *In re Philip Services (Delaware), Inc.*, Case No. 99-02385(MEW) (Bankr. D. Del. June 30, 1999); see also, *In re New York City Shoes, Inc.*, 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (debtor depositing postpetition funds into prepetition bank accounts); *In re Grant Broadcasting of Philadelphia, Inc.*, 75 B.R. 819 (E.D. Penn. 1987); *In re Charter Company, et al.*, 778 F.2d 617 (11th Cir. 1985).

Courts in this district have recognized that the strict enforcement of the requirement that a debtor-in-possession close its bank accounts does not serve the rehabilitative process of chapter 11. Accordingly, courts in this district have waived such requirements and replaced them with alternative procedures. *See, In re Anna's Linens, Inc.,* Case No. 8:15-bk-13008-TA, Docket No. 66 (Bankr. C.D. June 17, 2015); *In re Evergreen Oil, Inc.,* Case No. 8:13-bk-13163-SC, Docket No. 31 (Bankr. C.D. April 10, 2013); *In re Shilo Inn, Diamond Bar, LLC,* Case No. 2:10-bk-60884-VZ, Docket No. 38, (Bankr. C.D. January 14, 2011); *In re Shoe Pavilion, Inc.*, Case No. 1:08-bk-14939-MT, Docket No. 39, (Bankr. C.D. July 22, 2008); *In re Plaza Healthcare Center, LLC,* Case No. 8:14-bk-11335-CB, Docket No. 57, (Bankr. C.D. March 13, 2014); *In re Krystal Koach Inc.*, Case No. 8:10-bk-26547-CB, Docket No. 40, (Bankr. C.D. December 6, 2010); *In re North American Health Care, Inc.* Case No. 8:15-bk-10610-MW, Docket No. 50, (Bankr. C.D.

February 19, 2015).

Moreover, in order to avoid disruptions in the collection of sales receipts and corresponding delays in the payment of critical operating expenses, to ensure as smooth a transition into Chapter 11 as possible with minimal disruption, and to aid in the Debtor's efforts to successfully and efficiently complete this case, it is important that the Debtor be permitted to continue to maintain and utilize the Store Depository Accounts.  If the Debtor is required to close the Store Depository Accounts, the Debtor's ability to collect cash and credit card sales receipts generated by the Debtor's retail stores and e-commerce shop will likely be disrupted and/or delayed.  Authority for the Debtor to maintain and utilize the Store Depository Accounts post-petition will, among other things: (i) ensure the uninterrupted receipt of deposits from the Debtor's retail stores and receipts from credit card companies, (ii) minimize the disruption which would result from being forced to redirect these payments, (iii) allow for the fluid continuance of the Debtor's business transactions, including the payment of critical operating expenses, and (iv) assist in the Debtor's smooth transition into Chapter 11.

In furtherance of the maintenance of the Store Depository Accounts, the Debtor requests that the Store Depository Accounts be deemed debtor-in-possession bank accounts and that the Debtor be authorized to maintain and to continue to use the Store Depository Accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date (except that the Debtor will not make any operating disbursements from the Store Depository Accounts post-petition).

**B.     The Debtor Should Be Authorized To Continue To Use The Store Depository Accounts And To Establish And Maintain the DIP Accounts In Connection With Its Post-Petition Cash Management System.**

The cash management system and related procedures historically utilized by the Debtor constitute ordinary, usual and essential business practices, and are similar to those used by other major corporate enterprises. The Debtor's existing cash management system provides significant benefits to the Debtor, including the ability to (a) control corporate funds centrally, (b) ensure availability of funds when necessary, and (c) reduce administrative expenses by facilitating the

movement of funds and the development of more timely and accurate balance and presentment information.

The Store Depository Accounts have been utilized by the Debtor for the collection of store-level cash and credit card sales receipts for some time and provide a very efficient and secure means of collecting and managing such receipts. If the Debtor is required to close the Store Depository Accounts, the Debtor's ability to collect and utilize its store-level sales receipts will likely be disrupted and/or delayed, which in turn will have a negative and potentially significant impact on the Debtor's cash flow and ability to operate its business. Consequently, the maintenance of the Store Depository Accounts in the Debtor's existing cash management system is not only essential but is in the best interests of all creditors and other parties in interest.

In addition to the Store Depository Accounts, the Debtor has historically maintained the Pre-Petition Operating Accounts to make disbursements related to operations, office/administrative expenses, merchandise purchasing, store construction costs and other purposes. The Debtor will be closing the Pre-Petition Operating Accounts and opening five (5) DIP Accounts to replace the Pre-Petition Operating Accounts. In addition, the Debtor will be opening one (1) primary operating DIP Account from which virtually all of the Debtor's post-petition disbursements will be made, and one utility deposit DIP Account in which the Court-approved utility cash deposits will be maintained. The Debtor believes that the continuation of the Debtor's pre-petition cash management system post-petition – albeit in the form of replacement DIP Accounts – will promote efficiency and continuity. Moreover, since all of the sales receipts and other revenue generated by the Debtor will ultimately be deposited into one or more of the DIP Accounts (from which any and all operating disbursements made by the Debtor will be made), the Debtor will still be able to account for all of its receipts and disbursements in compliance with the reporting guidelines and requirements of the Office of the United States Trustee.

Based on the foregoing, the Debtor respectfully submits that it should be authorized to establish and utilize the DIP Accounts, from which all of the Debtor's post-petition disbursements will be made, and that any requirements for the Debtor to establish additional

debtor-in-possession bank accounts (including specifically designated debtor-in-possession accounts for taxes or payroll) should be waived.

### III.

### **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court hold a hearing on the Motion on an emergency basis and enter an order:

(1) affirming the adequacy of the Notice given herein;

(2) granting the Motion in its entirety;

(3) authorizing the Debtor to maintain and keep open the Store Depository Accounts post-petition, with all of the funds in the Store Depository Accounts to be swept into one or more of the DIP Accounts on a daily basis;

(4) authorizing the Debtor to establish and utilize the DIP Accounts, from which all of the Debtor's post-petition disbursements shall be made, and waiving any requirements for the Debtor to establish additional debtor-in-possession bank accounts (including specifically designated debtor-in-possession accounts for taxes or payroll); and

(5) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: June 15, 2017                    CORNERSTONE APPAREL, INC.

By: */s/ Eve H. Karasik*
TIMOTHY J. YOO
EVE H. KARASIK
JULIET Y. OH
LEVENE, NEALE, BENDER,
    YOO & BRILL L.L.P.
Proposed Attorneys for Debtor and
Debtor in Possession