TIMOTHY J. YOO (SBN 155531)
EVE H. KARASIK (SBN 155356)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: tjy@lnbyb.com, ehk@lnbyb.com, jyo@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>CORNERSTONE APPAREL, INC.,<br><br>Debtor. | Case No. 2:17-bk-17292-VZ<br><br>Chapter 11<br><br>**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION TAXES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF TAE Y. YI IN SUPPORT THEREOF**<br><br>Date: [TBD]<br>Time: [TBD]<br>Courtroom: 1368<br>Location: 255 E. Temple Street<br>Los Angeles, California |

Pursuant to 11 U.S.C. sections 105(a), 507(a)(8), 541, and 549 of chapter 11 of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code") for the entry of an order authorizing, in the Debtor's discretion, the payment of prepetition sales, use and other similar taxes (the "Taxes") that are payable to various governmental taxing authorities (the "Taxing Authorities").

The Debtor submits that the discretion to honor prepetition Taxes is essential to the Debtors' ongoing business operations and successful reorganization. Timely payment of the Taxes in the ordinary course of business is necessary to allow the Debtor to continue to operate during the bankruptcy cases and to avoid the imposition of unnecessary interest or penalties. In fact, if the Taxes are not paid by June 30, 2017, initial penalties will be assessed. Moreover, many of these Taxes are trust fund taxes and are not property of the estate. There is also a risk that the Debtor may be audited if the Taxes are not paid promptly. In addition, many Taxing Authorities and State agencies impose personal liability on the officers and directors of collecting entities, such as the Debtor, for Taxes collected by those entities that are not paid to the appropriate Taxing Authority. Such proceedings obviously would constitute a significant distraction for these officers and directors at a time when they should be focused on the Debtor's efforts to stabilize postpetition business operations and to develop and implement a successful reorganization strategy.

This Motion is based on the Memorandum of Points and Authorities and the Declaration of Tae Y. Yi filed in support of the Motion, the statements, arguments and representations of counsel to be made at the hearing on the Motion, if any, and any other evidence properly presented to the Court.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order:

1. granting the Motion in its entirety;
2. authorizing, but not directing, the Debtor in its sole discretion, to pay the Taxes to the appropriate Taxing Authorities in the ordinary course of its business; and

3. granting such other and further relief as the Court deems just and proper.

Dated: June 23, 2017

CORNERSTONE APPAREL, INC.

By: */s/ Eve H. Karasik*
TIMOTHY J. YOO
Eve H. KARASIK
JULIET Y. OH
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A. Background.**

1. On June 15, 2017 (the "Petition Date"), Cornerstone Apparel, Inc. d/b/a Papaya Clothing, a California corporation and the debtor and debtor- in-possession herein ( "Cornerstone" or the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor operates a chain of apparel stores under the name Papaya Clothing ("Papaya") that cater to teens, juniors and the "young at heart," and focuses on the 16 to 25 year old age group. Cornerstone has over 80 stores located in malls and shopping centers throughout the United States. The Papaya concept is to provide shoppers with "great price, great service," and an "innovative, upscale and welcoming atmosphere."

3. The Debtor is based in Commerce, California with a 75,000 square feet headquarters complex, which includes its warehouse and distribution facilities. The merchandise sold in the Papaya stores is manufactured in the United States, and is housed in the Debtor's California warehouse where the Debtor's employees pack and ship the merchandise to the retail locations. Given the ever-changing fashion world, the Debtor has established a production line that can take a new design from start to finish within a two-week period in order to give the customer an impressive selection of the latest fashions.

4. The Debtor's ownership and management have over twenty-five years' experience in operating retail clothing business focusing primarily in the junior and petite apparel markets. This ownership and management team is responsible for the prior successes of retailers Everblue Casuals and Career Image. The Debtor consistently leads in its retail category in sales per square foot of retail space.

5. The Debtor employs a workforce of approximately of 1,300 employees. In 2016,

the Debtor generated annual gross revenues of more than $134 million. The Debtor has no secured debt.

6. After opening its first retail store approximately 18 years ago in 1999, the Debtor substantially expanded its business operations to encompass a total of over 80 of retail stores throughout the United States by 2017. Approximately, 50 of these new retail stores were opened within the last six (6) years. The expansion effort took a heavy financial toll on the business operations of the Debtor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

7. The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the resulting increased competition, has left the Debtor with insufficient liquidity to meet all of its financial obligations. While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 80 retail stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining retail stores and identify other ways to decrease operational costs and increase profitability. In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

8. Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores, all of which the Debtor believes will enable it to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

**B. <u>The Taxes</u>.**

9. In the ordinary course of their business, the Debtor collects, withholds and incurs

Taxes that include sales and use, business and regulatory fees, and other taxes and fees. The Debtor is required to remit the sales and use taxes collected in connection with the sale of goods at its stores to the applicable Taxing Authorities on a periodic basis, usually monthly in arrears for the prior month. Taxes are remitted by the Debtor through checks and electronic transfers that are processed through its banks and other financial institutions.

10. Many governmental authorities where the Debtor operates its business require that the Debtor obtain a business license and pay corresponding occupational fees and/or fees associated with the filing of an annual report with such jurisdictions. The requirement for a company to obtain a business license varies according to the tax law of the jurisdictions, and depends on many factors, including gross receipts.

11. Since the Taxes generally are paid in arrears, the Debtor holds the Taxes for a period of time before remitting them to the appropriate Taxing Authorities. As such, some of the Taxing Authorities were not paid for all prepetition Taxes prior to the Petition Date. As of the Petition Date, the Debtor had collected and retained approximately $670,160.26 in prepetition Taxes for which payment is due in the ordinary course of business. A schedule of these Taxes is attached as Exhibit "A" to the Yi Declaration.

## II.

## DISCUSSION

### A. To the Extent They Are "Trust Fund" Taxes, the Taxes Likely Are Not Property of the Estate.

To the extent that the Debtor has collected Taxes prepetition that must be remitted to the Taxing Authorities, such funds may be viewed as being held in trust by the Debtor for the benefit of the Taxing Authorities, and not as constituting property of the Debtor's estate. Section 541(d) of the Bankruptcy Code provides, in pertinent part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

Because the Taxes may be considered so-called "trust fund" amounts, these funds may be viewed as being held in trust for the Taxing Authorities. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53 (1990); *Rosenow v. Illinois Dept. of Revenue (In re Rosenow)*, 715 F.2d 277, 282 (7th Cir. 1983) (sales tax required by state law to be collected by sellers from their customers is "trust fund" tax); *Shank v. Washington State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 830 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax); *DeChiaro v. New York State Tax Comm'n*, 760 F.2d 432, 433-34 (2d Cir. 1985) (same); *In re Al Copeland Enters., Inc.*, 133 B.R. 837 (Bankr. W.D. Tex. 1991), *aff'd*, 991 F.2d 233 (5th Cir. 1993) (same); *In re American Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (excise and withholding taxes). Thus, the Debtor likely has no equitable interest in such amounts and should be permitted to pay the Taxes to the Taxing Authorities to which they are owed as they become due.

**B. <u>The Taxes Are Entitled to Priority</u>.**

Section 507(a)(8) of the Bankruptcy Code gives priority to the Taxing Authorities' claims for sales, use, and excise taxes and customs duty. 11 U.S.C. § 507(a)(8). To the extent they are priority claims, the prepetition obligations to the Taxing Authorities must ultimately be paid in full (either immediately or over time) under any plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(C). Thus, the payment of prepetition priority Taxes at this time would not prejudice the rights of other creditors, but would merely accelerate payments that would otherwise become due as part of the Debtor's reorganization. At the same time, such payment would avoid the significant problems and issues, described herein, that could arise if the unpaid Taxes were not paid at this time.

**C. Payment of the Taxes Is Necessary to Preserve the Debtor's Business.**

Paying the prepetition Taxes is essential to the Debtors' ongoing business operations and successful reorganization. If the Debtor's fail to pay Taxes, the Taking Authorities may take actions that could impact the Debtor's ability to operate without interruption. The Debtors also may incur, and would be obligated to pay, increased interest and significant penalties if the estate

does not timely satisfy its ongoing tax obligations for the prepetition period or thereafter. In fact, if the Taxes are not paid by June 30, 2017, initial penalties will be assessed.

The Debtor also believes that some of the Taxing Authorities may cause the Debtor to be audited if the Taxes are not paid promptly. Such audits would further divert attention from the reorganization process and increase the costs of administering this estate.

In addition, many Taxing Authorities and State agencies impose personal liability on the officers and directors of collecting entities, such as the Debtor, for Taxes collected by those entities that are not paid to the appropriate Taxing Authority. Thus, to the extent that any prepetition Taxes are unpaid, the Debtor's officers and directors may be subject to audits and/or lawsuits on account of nonpayment during the pendency of these chapter 11 cases. Such proceedings obviously would constitute a significant distraction for these officers and directors at a time when they should be focused on the Debtor's efforts to stabilize postpetition business operations and to develop and implement a successful reorganization strategy. This problem could be compounded if the affected individuals assert rights of indemnity against the Debtor for any costs incurred in defending against or otherwise responding to claims which Taxing Authorities and/or State agencies might assert against them on account of the Debtor's nonpayment of Taxes.

There is ample precedent authorizing the Debtor to honor the prepetition Taxes. Authority for such payments is found in sections 1107(a) and 1108 of the Bankruptcy Code, which vest a debtor in possession with authority to continue operating its business. 11 U.S.C. § 1107(a) and 1108. Sometimes this duty and the duty to maximize estate value can only be achieved through the payment of prepetition claims. *See, e.g. In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003*); In re Coserv. L.L.C.*, 273 B.R. 487, 498 (Bankr. N.D. Tex. 2003).

Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. 105(a). The purpose of section 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of its jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-6 (Alan N. Resnick & Henry J. Sommer eds., 16th

ed.).

Using their equitable powers, bankruptcy courts have repeatedly permitted postpetition payment of prepetition obligations when those payments are necessary to preserve the going concern value of a debtor's business. *See, e.g., In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001); *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 312 (1882) (authorizing payment of pre-receivership claim prior to reorganization to prevent "stoppage of . . . [indispensable] business relations"); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 855 (Bankr. S.D.N.Y. 1989 (payment of prepetition claim is appropriate if it “confers a benefit on the estate and not merely on the payee”).

The Debtor submits that authorizing the payment of the Taxes is a proper exercise of the Court’s equitable powers under the circumstances. Payment of the Debtor’s Taxes is necessary to allow the Debtor to continue to operate its business and engage in successful restructuring efforts.

**D. Section 549 of the Bankruptcy Code Grants Implied Authority to Pay the Taxes.**

Finally, Bankruptcy Code section 549(a)(2)(B), which governs most postpetition transfers, provides in part that "the trustee may avoid a transfer of property of the estate (1) made after the commencement of the case and, . . . that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(2)(B) (emphasis added). It follows that the Court may authorize certain postpetition payments to satisfy prepetition debts, including the prepetition Taxes. The statute grants the Court, faced with the intricate facts and circumstances of each case, the discretion to ascertain whether a debtor's business judgment to make a postpetition transfer inures to the benefit of the estate in the particular case, and, if so, to authorize the transfer. *See Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.)*, 37 B.R. 334, 336 n.3 (W.D. Mo.), appeal dismissed, 738 F.2d 445 (8th Cir. 1984) ("It would appear proposed transfers could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack under section 549 . . . "). As demonstrated above, the payment of prepetition Taxes is vital to the Debtor’s reorganization.

For all of these reasons, timely payment of the Taxes is in the estate’s best interest and essential to the Debtor’s continued operations and reorganization efforts. The Court should

authorize the postpetition transfer of assets of the estate to satisfy these obligations, regardless of whether they arose before or after the Petition Date.

## III.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order:

(1) affirming the adequacy of the notice given;

(2) granting the Motion in its entirety;

(3) authorizing, but not directing, the Debtor in its sole discretion, to pay the Taxes to the appropriate Taxing Authorities in the ordinary course of its business; and

(4) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: June 23, 2017 CORNERSTONE APPAREL, INC.

By: */s/ Eve H. Karasik*
TIMOTHY J. YOO
EVE H. KARASIK
JULIET Y. OH
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**DECLARATION OF TAE Y. YI**

I, Tae Y. Yi, hereby declare as follows:

1. I am over 18 years of age. I am the President, Chief Financial Officer, Secretary, and one of the three shareholders of Cornerstone Apparel, Inc., d/b/a Papaya Clothing, the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case ("Cornerstone" and the "Debtor"), and am therefore familiar with the business operations and financial books and records of the Debtor. I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2. I have access to the Debtor's books and records. As the President, Chief Financial Officer and Secretary of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor. The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents. The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3. I make this declaration in support of the motion (the "Motion") to which this declaration is attached, pursuant to which the Debtor is seeking the entry of an order authorizing in the Debtor's discretion: (i) the payment of prepetition sales, use and other similar taxes (the "Taxes") that are payable to various governmental taxing authorities (the "Taxing Authorities").

4. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 15, 2017 (the "Petition Date"). The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession.

5. Cornerstone operates a chain of apparel stores under the name Papaya Clothing ("Papaya") that cater to teens, juniors and the "young at heart," and focuses on the 16 to 25 year old age group. Cornerstone has over 80 stores located in malls and shopping centers throughout the United States. The Papaya concept is to provide shoppers with "great price, great service," and an "innovative, upscale and welcoming atmosphere."

6. Cornerstone is based in Commerce, California with a 75,000 square feet headquarters complex, which includes its warehouse and distribution facilities. The merchandise sold in the Papaya stores is manufactured in the United States, and is housed in Cornerstone's California warehouse where Cornerstone's employees pack and ship the merchandise to the retail locations. Given the ever-changing fashion world, Cornerstone has established a production line that can take a new design from start to finish within a two-week period in order to give the customer an impressive selection of the latest fashions.

7. Cornerstone's ownership and management have over twenty-five years' experience in operating retail clothing business focusing primarily in the junior and petite apparel markets. This ownership and management team is responsible for the prior successes of retailers Everblue Casuals and Career Image. Papaya consistently leads in its retail category in sales per square foot of retail space.

8. The Debtor employs a workforce of approximately of 1,300 employees. In 2016, the Debtor generated annual gross revenues of more than $134 million. The Debtor has no secured debt.

9. After opening its first retail store approximately 18 years ago in 1999, the Debtor substantially expanded its business operations to encompass a total of over 80 of retail stores throughout the United States by 2017. Approximately, 50 of these new retail stores were opened within the last six (6) years. The expansion effort took a heavy financial toll on the business operations of the Debtor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

10. The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the resulting increased competition, has left Cornerstone with insufficient liquidity to meet all of its financial obligations. While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 80 retail stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining retail stores and identify other

ways to decrease operational costs and increase profitability. In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

11. Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores, all of which the Debtor believes will enable it to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

12. In the ordinary course of their business, the Debtor collects, withholds and incurs Taxes that include sales and use, business and regulatory fees, and other taxes and fees. The Debtor is required to remit the sales and use taxes collected in connection with the sale of goods at its stores to the applicable Taxing Authorities on a periodic basis, usually monthly in arrears for the prior month. Taxes are remitted by the Debtor through checks and electronic transfers that are processed through its banks and other financial institutions.

13. Many governmental authorities where the Debtor operates its business require that the Debtor obtain a business license and pay corresponding occupational fees and/or fees associated with the filing of an annual report with such jurisdictions. The requirement for a company to obtain a business license varies according to the tax law of the jurisdictions, and depends on many factors, including gross receipts.

14. Since the Taxes generally are paid in arrears, the Debtor holds the Taxes for a period of time before remitting them to the appropriate Taxing Authorities. As such, some of the Taxing Authorities were not paid for all prepetition Taxes prior to the Petition Date. As of the Petition Date, the Debtor had collected and retained approximately $670,160.26 in prepetition Taxes for which payment is due in the ordinary course of business. A true and correct schedule of these Taxes is attached as Exhibit "A" hereto.

15. Giving the Debtor the discretion to honor prepetition Taxes is essential to the Debtors' ongoing business operations and successful reorganization. Timely payment of the Taxes in the ordinary course of business is necessary to allow the Debtor to continue to operate during the bankruptcy cases and to avoid the imposition of unnecessary interest or penalties. If the Taxes are not paid by June 30, 2017, the penalties will be assessed. There is also a risk that the Debtor may be audited if the Taxes are not paid promptly. In addition, many Taxing Authorities and State agencies impose personal liability on the officers and directors of collecting entities, such as the Debtor, for Taxes collected by those entities that are not paid to the appropriate Taxing Authority. Such proceedings obviously would constitute a significant distraction for these officers and directors at a time when they should be focused on the Debtor's efforts to stabilize postpetition business operations and to develop and implement a successful reorganization strategy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 23 day of June, 2017, at Commerce, California.

TAE Y. YI

# **EXHIBIT "A"**

[Schedule of Taxes to be Paid]

| Bank | Acct No. | Payee | Ck. No. | Debit Date | Store | Amount |
|---|---|---|---|---|---|---|
| Bank of America | -3791 | Board of Equalization | ach | 6/15/17 | CA-all | 336,649.00 |
| Bank of America | -1211 | Florida Department of Revenue | ach | 6/15/17 | FLA | 15,862.45 |
| Bank of America | -0087 | Florida Department of Revenue | ach | 6/15/17 | FLB | 13,444.36 |
| Bank of America | -6494 | Florida Department of Revenue | ach | 6/15/17 | FLD | 3,979.85 |
| Bank of America | -1265 | Florida Department of Revenue | ach | 6/15/17 | FLF | 9,277.49 |
| Bank of America | -1125 | Florida Department of Revenue | ach | 6/15/17 | FLI | 8,788.45 |
| Bank of America | -6464 | Florida Department of Revenue | ach | 6/15/17 | FLJ | 2,890.76 |
| Bank of America | -2710 | Florida Department of Revenue | ach | 6/15/17 | FLL | 4,750.42 |
| Bank of America | -2738 | Florida Department of Revenue | ach | 6/15/17 | FLM | 9,765.66 |
| Bank of America | -2763 | Florida Department of Revenue | ach | 6/15/17 | FLN | 5,575.42 |
| Bank of America | -7373 | Florida Department of Revenue | ach | 6/15/17 | FLP | 9,404.53 |
| Bank of America | -6008 | Florida Department of Revenue | ach | 6/15/17 | FLQ | 4,961.76 |
| Bank of America | -8042 | Florida Department of Revenue | ach | 6/15/17 | FLS | 6,920.19 |
| Bank of America | -3108 | Florida Department of Revenue | ach | 6/15/17 | FLT | 6,582.52 |
| Bank of America | -8364 | Florida Department of Revenue | ach | 6/15/17 | FLU | 4,386.49 |
| Bank of America | -7891 | Comptroller of Public Accounts | ach | 6/15/17 | TX-all | 183,352.71 |
| Bank of America | -1147 | Virginia Department of Taxation | ach | 6/15/17 | VAA | 8,979.78 |
| Bank of America | -1147 | Virginia Department of Taxation | ach | 6/16/17 | VAA | 7,512.88 |
| Bank of America | -5288 | Virginia Department of Taxation | ach | 6/15/17 | VAF | 6,158.30 |
| Bank of America | -5288 | Virginia Department of Taxation | ach | 6/16/17 | VAF | 6,187.15 |
| Bank of America | -6465 | Virginia Department of Taxation | ach | 6/15/17 | VAG | 7,740.58 |
| Bank of America | -6465 | Virginia Department of Taxation | ach | 6/16/17 | VAG | 6,989.51 |
| Total | | | | | | **670,160.26** |

Jurisdiction:

| | |
|---|---|
| California | 336,649.00 |
| Florida | 106,590.35 |
| Texas | 183,352.71 |
| Virginia | 43,568.20 |
| **Total** | **670,160.26** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION TAXES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF TAE Y. YI IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 23, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Dustin P Branch branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **John H Choi johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Richard T Davis rdavis@cafarocompany.com, lspahlinger@cafarocompany.com**
- **Ronald E Gold rgold@fbtlaw.com, joguinn@fbtlaw.com**
- **Eve H Karasik ehk@lnbyb.com**
- **John W Kim johnkim@jwklawgroup.com**
- **Noreen A Madoyan Noreen@MarguliesFaithLaw.com, Helen@MarguliesFaithlaw.com;Victoria@MarguliesFaithlaw.com;Brian@MarguliesFaithlaw.com**
- **Monserrat Morales mmorales@marguliesfaithlaw.com, Helen@marguliesfaithlaw.com;Victoria@marguliesfaithlaw.com;Brian@marguliesfaithlaw.com**
- **Kelly L Morrison kelly.l.morrison@usdoj.gov**
- **Juliet Y Oh jyo@lnbrb.com, jyo@lnbrb.com**
- **Kristen N Pate ggpbk@ggp.com**
- **Christopher E Prince cprince@lesnickprince.com, jmack@lesnickprince.com;mlampton@lesnickprince.com;cprince@ecf.courtdrive.com**
- **Benjamin Seigel bseigel@greenbass.com, rholland@greenbass.com;ecfnotification@greenbass.com**
- **Michael A Shakouri mshakouri@goodkinlynch.com, paralegal@goodkinlynch.com**
- **Ronald M Tucker rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov**
- **Ashley R Wedding awedding@fabozzimillerlaw.com, dsandoval@fabozzimillerlaw.com**
- **Timothy J Yoo tjy@lnbyb.com**

**2.** **SERVED BY UNITED STATES MAIL**: On **June 23, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 23, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
Hon. Vincent P. Zurzolo
United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street, Suite 1360 / Ctrm 1368
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 23, 2017 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

Cornerstone Apparel, Inc. (8096)
Top 20 and Alleged Secureds

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

Bank of America, N.A.
2059 Northlake Parkway 3 North
Tucker, GA 30084

Eklecco Newco, LLC
4 Clinton Square
Syracuse, NY 13202

Ambiance Apparel
2415 E. 15th Street
Los Angeles, CA 90021

Chocolate U.S.A.
1150 S. Crocker Street
Los Angeles, CA 90021

Wax Jean
Attn: Steve Noh
930 Towne Ave.
Los Angeles, CA 90021

Iris / K & L
Wholesales, Corp.
3317 East 50th Street
Vernon, CA 90058

Fashion Art
1100 S. San Pedro St. # D-1
Los Angeles, CA 90015

Itsme Jean, Inc.- No Factor
1100 S. San Pedro St., #L-1
Los Angeles, CA 90015

DNA Couture, Inc.
747 E. 10th St., #102-103
Los Angeles, CA 90021

edgemine, Inc.
1801 E. 50th Street
Los Angeles, CA 90058

Reflex
1100 S. San Pedro St., # D-4
Los Angeles, CA 90015

Heart & Hips
2424 E. 26th St.
Vernon, CA 90058

Belinda / X.E.N.O.S
1138 S. Crocker St.
Los Angeles, CA 90021

Active USA Inc.
1807 E. 48th Place
Los Angeles, CA 90058

Blossom Inc.
P.O. Box 76327
Los Angeles, CA 90076

Style Melody, Inc. / Lovetree
110 E. 9th Street, Suite #A-1126
Los Angeles, CA 90079

Danbee, Inc.
3360 E. Pico Blvd
Los Angeles, CA 90023

Papermoon / J & E
Trading USA, LLC
1100 S. San Pedro St., #A-4
Los Angeles, CA 90074-1084

Miss Avenue
776 E. 10th Street, #121
Los Angeles, CA 90074-0952

Parks at Arlington LLC
110 N. Wacker Dr.
Chicago, IL 60606

HYFVE, Inc. (Double Zero)
Dept. LA 24406
Pasadena, CA 91185-4406

Parkway Plaza LP
c/o Starwood Capital Group
591 West Putnam Avenue
Greenwich, CT 06830