TIMOTHY J. YOO (SBN 155531)
EVE H. KARASIK (SBN 155356)
JULIET Y. OH (SBN 211414)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: tjy@lnbyb.com, ehk@lnbyb.com
jyo@lnbyb.com, jsk@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

In re

CORNERSTONE APPAREL, INC.
d/b/a Papaya Clothing,

Debtor.

Case No. 2:17-bk-17292-VZ

Chapter 11

**DEBTOR-IN-POSSESSION'S REPORT ON STATUS OF REORGANIZATION CASE; DECLARATIONS OF TAE YI AND JULIET Y. OH, ESQ. IN SUPPORT THEREOF**

<u>Status Conference:</u>
Date: August 3, 2017
Time: 9:30 a.m.
Courtroom: 1368
Location: 255 E. Temple Street
Los Angeles, California

**TO THE HONORABLE VINCENT P. ZURZOLO; ALL KNOWN SECURED CREDITORS (IF ANY); THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND ITS PROPOSED COUNSEL OF RECORD; THE TWENTY LARGEST CREDITORS HOLDING UNSECURED CLAIMS; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

Cornerstone Apparel, Inc., a California corporation d/b/a Papaya Clothing and the debtor and debtor-in-possession herein (the "Debtor"), hereby submits its report on the status of the Debtor's reorganization case pursuant to the Court's *Order: (1) Setting Conference On Status Of Reorganization Case; (2) Requiring Debtors-In-Possession To Appear At Status Conference And File Report On Status Of Reorganization Case, Or Face Possible (A) Conversion Of Case To Chapter 7; (B) Dismissal Of Case; or (C) Appointment Of Trustee; (3) Requiring Compliance With Standards Re Employment And Fee Applications; (4) Giving Notice Of Probable Use Of Court-Appointed Expert Witness For Contested Valuation Requests; (5) Mandating Use Of Forms By Individual Debtors; And (6) Establishing Procedure For (A) Motion For Order Approving Adequacy Of Disclosure Statement; And (B) Motion For Order Confirming Plan* entered on June 19, 2017.

**A. Summary Of Events Which Have Occurred Since The Debtor's Bankruptcy Filing.**

The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 15, 2017 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

1. First Day Motions.

On the Petition Date (*i.e.*, June 15, 2017), the Debtor filed the following four (4) emergency "first-day" motions:

a. *Utility Motion.* The Debtor filed a motion (the "Utility Motion") seeking the entry of a Court order authorizing the Debtor to provide adequate assurance of payment to its utility companies in the form of cash deposits, in the total aggregate

amount of $116,356. Generally, the Debtor proposed to provide its utility companies with a cash deposit in an amount equal to the average monthly payment based on payments historically made on the utility account(s) (as determined by the last three monthly or bi-monthly payments made on such utility accounts), or a lower amount if agreed to in writing by the applicable utility company. Given the large number of utility companies which provide utility services to the Debtor at its corporate office and its approximately 80 retail stores located throughout the United States, and the logistical difficulty and expense associated with issuing and distributing individual checks for the cash deposits to the utility companies within the first thirty (30) days of the Debtor's Chapter 11 bankruptcy case, the Debtor sought authority to establish certain procedures as described in the Utility Motion for providing access to the cash deposits to the utility companies. These procedures include that the cash deposits will be held by the Debtor in a separate debtor-in-possession utility bank account.

b. *Cash Management Motion.* The Debtor filed a motion (the "Cash Management Motion") seeking the entry of a Court order authorizing the Debtor to implement and maintain the cash management system proposed in the Cash Management Motion. Through the Cash Management Motion, the Debtor sought authority to leave open its eight five (85) retail store depository accounts, and to close the Debtor's remaining five (5) operating or disbursement bank accounts and re-open such accounts as debtor-in-possession bank accounts. As noted in the Cash Management Motion, the Debtor also proposed to open two (2) new debtor-in-possession bank accounts to serve as the central disbursement bank account for the Debtor and to hold the utility deposits described in the Utility Motion.

c. *Customer Programs Motion.* The Debtor filed a motion (the "Customer Programs Motion") seeking the entry of a Court order authorizing the Debtor, in its discretion, to honor certain prepetition customer gift cards, merchandise credits, and its advertising program in the ordinary course of business.

d. *Lease Rejection Motion.* The Debtor filed a motion (the "Lease Rejection Motion") seeking the entry of a Court order authorizing the Debtor to (i) reject eight (8) of the Debtor's unexpired non-residential real property leases relating to the Debtor's retail stores which the Debtor was operating as of the Petition Date, with the rejection of such leases to be deemed effective as of June 30, 2017 as the Debtor has paid rent through that date; (ii) authorizing (but not requiring) the Debtor to reject twenty-two (22) of the Debtor's unexpired non-residential real property leases relating to the Debtor's retail stores which the Debtor had vacated and was no longer operating as of the Petition Date, with the rejection of such leases to be deemed effective as of the Petition Date (*i.e.*, June 15, 2017); and (iii) authorizing the Debtor to abandon any of its remaining personal property assets located at each of the foregoing retail stores. At the hearing on the Lease Rejection Motion, the Debtor withdrew the request to abandon the personal property at the retail stores.

On June 16, 2017, one day after the Petition Date, the Debtor filed a fifth emergency "first-day" motion (the "Wage Motion") seeking the entry of a Court order authorizing the Debtor to pay and/or honor all pre-petition wages of its employees (including those wages which are unpaid as a result of a pre-petition payroll check being returned for insufficient funds which may be caused by, among other things, the conversion of the Debtor's pre-petition bank accounts to debtor-in-possession accounts), provided that no employee receives more than $12,850 for such wages.

A hearing on the Debtor's first-day motions was conducted on June 20, 2017 at 1:30 p.m. At such hearing, the Court overruled any objections (to the extent any such objections remained unresolved) and granted each of the first-day motions in their entirety. On June 21, 2017, the Court entered written orders granting the Utility Motion, the Cash Management Motion, the Customer Programs Motion (on an interim basis, pending a final hearing set on August 3, 2017 at 9:30 a.m.), and the Lease Rejection Motion. On June 22, 2017, the Court entered a written order granting the Wage Motion in its entirety.

      2. Motion For Authority To Pay Prepetition Sales And Use Taxes.

On June 23, 2017, the Debtor filed a motion (the "Prepetition Tax Motion") seeking the entry of a Court order authorizing, in the Debtor's discretion, the payment of prepetition sales, use and other similar taxes (the "Taxes") that are payable to various governmental taxing authorities in the ordinary course to allow the Debtor to continue to operate business during the bankruptcy case and avoid the imposition of unnecessary interest or penalties. Concurrently with the Prepetition Tax Motion, the Debtor filed an application for an order setting a hearing on the Prepetition Tax Motion on shortened notice. The Office of the United States Trustee ("OUST") requested confirmation that the only Taxes proposed to be paid pursuant to the Prepetition Tax Motion were sales taxes, which the Debtor confirmed. Based on the foregoing, the Court entered a written order on June 26, 2017 granting the Prepetition Tax Motion without requiring a hearing on such motion.

3. Administrative Compliance.

The Debtor has complied with the requirements of the OUST by, among other things, filing its "7-Day Package" with the OUST on June 22, 2017 (followed by three separate supplements to the 7-Day Package filed on July 6, 2017 and July 13, 2017), opening seven (7) debtor-in-possession bank accounts with Bank of America, Hanmi Bank and Bank of Hope (collectively, the "DIP Accounts"), and closing the Debtor's pre-petition bank accounts (other than the store depository accounts related to currently operating retail stores, which accounts were authorized to remain open pursuant to the Cash Management Motion and the Court's order granting such motion).

The Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs on July 13, 2017, within the extended time period by which the Debtor was ordered by the Court to do so.

The meeting of creditors under 11 U.S.C. § 341(a) for the Debtor's bankruptcy case is currently scheduled on July 28, 2017 at 9:00 a.m.

4.      Appointment Of A Committee.

On July 11, 2017, the OUST provided notice of its appointment of an Official Committee of Unsecured Creditors (the "Committee") in the Debtor's case.  The Debtor has been informed that the Committee has retained the law firm of Lewis, Brisbois, Bisgaard & Smith LLP as its bankruptcy counsel and Province Inc. as its financial advisor.  The Debtor has communicated with the Committee and its proposed professionals with respect to a number of issues relating to this case.  The Debtor hopes to work collaboratively with the Committee (as well as other creditors) to formulate an appropriate exit strategy which benefits all creditors and parties in interest in the Debtor's case.

**B.      The Debtor's Post-petition Operations And Litigation Involving The Debtor.**

1.      Post-Petition Operations.

The Debtor operates a chain of apparel stores under the name Papaya Clothing ("Papaya") that cater to teens, juniors and the "young at heart," and focuses on the 16 to 25 year old age group. As of the Petition Date, the Debtor was operating over 80 stores located in malls and shopping centers throughout the United States.

The Debtor is based in Commerce, California with a 75,000 square feet headquarters complex, which includes its warehouse and distribution facilities.  As of the Petition Date, the Debtor employed a workforce of approximately of 1,300 employees.  The merchandise sold in the Papaya stores is manufactured in the United States, and is housed in the Debtor's California warehouse where the Debtor's employees pack and ship the merchandise to the retail locations. Given the ever-changing fashion world, the Debtor has established a production line that can take a new design from start to finish within a two-week period in order to give the customer an impressive selection of the latest fashions.  In 2016, the Debtor generated annual gross revenues of more than $134 million.

The Debtor has no secured debt.  Therefore, none of the Debtor's cash is encumbered or constitutes the collateral of any creditor.

Since the Petition Date, the Debtor has been operating its business in the ordinary course.

2. Litigation Involving the Debtor.

As reflected in the Debtor's Statement of Financial Affairs, pre-petition, the Debtor was a party to a number of litigation matters. To the best of the Debtor's knowledge, all such litigation matters have been stayed by operation of the automatic stay pursuant to 11 U.S.C. § 362. There are a number of labor proceedings to which the Debtor is a party, which proceedings may not be subject to the automatic stay and will therefore likely proceed.

**C. Status Of The Debtor's Reorganization Efforts, And Estimate As To Timeframe For The Filing Of Motion For Order Approving Adequacy Of Disclosure Statement And Motion For Order Confirming Chapter 11 Plan.**

The Debtor had already closed a number of its less profitable retail store locations prior to the Petition Date, leaving open approximately 80 retail stores as of the Petition Date. The Debtor is currently focused on evaluating the viability of the remaining retail stores and identifying other ways to decrease operational costs and increase profitability.

Through its bankruptcy case, the Debtor intends to identify the core retail stores around which the Debtor can successfully reorganize, to expeditiously close those retail stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the retail stores in the ordinary course, all of which the Debtor believes will enable it to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

The Debtor believes that, upon the completion of the Debtor's evaluation of the viability of its remaining retail stores and pending negotiations with the landlords of those retail stores determined by the Debtor to be unprofitable or "borderline" locations, which evaluation and negotiations the Debtor hopes to complete by August 31, 2017, the Debtor will be in a position to formulate and file a feasible plan of reorganization.

The Debtor is committed to exiting from bankruptcy as quickly and cost-effectively as possible. The Debtor's exclusive period to file a plan of reorganization under 11 U.S.C. § 1121 will expire on October 13, 2017. The Debtor anticipates that it will be able to formulate and file a plan of reorganization in this case within such exclusivity period (*i.e.*, on or before October 13, 2017), barring any circumstances which would warrant an extension of its plan exclusivity periods. Based on the foregoing, the Debtor estimates that it will be able to file a motion for an order approving the adequacy of a disclosure statement by October 13, 2017, and estimates that it will be able to file a motion for an order confirming a plan of reorganization promptly after the entry of a Court approving a disclosure statement in this case.

**D. The Debtor Has Performed All Of Its Duties Under 11 U.S.C. §§ 521, 1106 and 1107.**

As noted above, since the Petition Date, the Debtor has fulfilled its administrative duties as a debtor-in-possession by, among other things, timely filing the Debtor's Schedules of Assets and Liabilities, Statement of Financial Affairs and related documents, filing with the OUST the Debtor's "7-Day Package" (and three separate supplements thereto), attending the Initial Debtor Interview conducted by the OUST, closing the Debtor's pre-petition accounts (other than those retail store depository accounts authorized to remain open), opening the DIP Accounts, and timely filing the Debtor's first monthly operating report (for the post-petition period ending June 30, 2017). Therefore, the Debtor believes that it is in full compliance with all of its obligations and duties under 11 U.S.C. §§ 521, 1106 and 1107.

**E. Proposed Deadlines For Filing Claims And Hearings On Any Objections Thereto.**

On June 30, 2017, the Debtor filed a motion seeking to establish August 30, 2017 as the bar date by which parties who wish to assert pre-petition claims against the Debtor must file and serve proofs of claim or be forever barred from asserting such pre-petition claims against the Debtor (the "Bar Date Motion").

Following the appointment of the Committee, proposed counsel for the Committee requested that the Debtor agree to a claims bar date later than the date proposed in the Bar Date Motion. The Debtors have proposed that September 15, 2017 be established as the claims bar

date in the Debtor's case, which proposal the Committee is currently considering. In the meantime, the Debtor has agreed not to lodge an order granting the Bar Date Motion until after July 21, 2017.

The Debtor anticipates that its plan of reorganization will provide for a deadline by which objections to claims must be filed and, therefore, requests that the Court not establish a deadline for filing objections to claims at this time. However, if the Court requires that such a deadline be set now, the Debtor respectfully requests that the deadline be set at least 120 days after the claims bar date (*i.e.*, on or after January 15, 2018 if the claims bar date is September 15, 2017).

**F. Employment Of Professionals.**

The Debtor filed its application to employ Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB") as its general bankruptcy counsel (the "LNBYB Application") on June 28, 2017. No objection to, or request for hearing on, the LNBYB Application has been filed to date. However, the Committee and its proposed counsel have requested additional time to review the LNBYB Application, and the Debtor has agreed not to lodge an order approving the LNBYB Application until after July 21, 2017. Attached as **Exhibit "1"** to the Declaration of Juliet Y. Oh annexed hereto (the "Oh Declaration") is a "Professional Compensation and Fee Budget" for LNBYB, which was prepared by LNBYB.

The Debtor filed its application to employ The Law Offices Of Steven C. Kim & Associates (the "Kim Firm") as its special real estate, business and litigation counsel (the "Kim Firm Application") on June 29, 2017. No objection to, or request for hearing on, the Kim Firm Application has been filed to date. However, the Committee and its proposed counsel have requested additional time to review the Kim Firm Application, and the Debtor has agreed not to lodge an order approving the Kim Firm Application until after July 21, 2017. Attached as **Exhibit "2"** to the Oh Declaration is a "Professional Compensation and Fee Budget" for the Kim Firm, which was prepared by the Kim Firm and provided to LNBYB.

The Debtor filed its application to employ Young-Woo Park, CPA ("Park") as its accountant (the "CPA Application") on July 13, 2017. The objection period for the CPA

Application has not yet expired. Attached as **Exhibit "3"** to the Oh Declaration is a "Professional Compensation and Fee Budget" for Park, which was prepared by Park and provided to LNBYB.

Dated: July 18, 2017

CORNERSTONE APPAREL, INC.

By:______________________________

TIMOTHY J. YOO
EVE H. KARASIK
JULIET Y. OH
JEFFREY S. KWONG
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
Attorneys for Debtor and Debtor in Possession

**DECLARATION OF TAE YI**

I, Tae Yi, hereby declare as follows:

1. I am over 18 years of age. I am the President, Chief Financial Officer, Secretary, and one of the three shareholders of Cornerstone Apparel, Inc., d/b/a Papaya Clothing, the debtor and debtor in possession herein (the "Debtor"), and am therefore familiar with the business operations and financial books and records of the Debtor. I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2. I have access to the Debtor's books and records. As President, Chief Financial Officer and Secretary of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor. The records and documents referred to in this declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents. The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3. I make this declaration in support of the Debtor's report on the status of the Debtor's reorganization case (the "Status Report"), to which this declaration is attached. All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Status Report.

4. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 15, 2017 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession.

5. On the Petition Date (*i.e.*, June 15, 2017), the Debtor filed the four emergency "first-day" motions identified in the Status Report, specifically, the Utility Motion, the Cash Management Motion, the Customer Programs Motion, and the Lease Rejection Motion

6. One day after the Petition Date, on June 16, 2017, the Debtor filed a fifth emergency "first-day" motion – specifically, the Wage Motion.

7.    A hearing on the Debtor's first-day motions was conducted on June 20, 2017 at 1:30 p.m.    I personally appeared at such hearing.    At the hearing, the Court overruled any objections (to the extent any such objections remained unresolved) and granted each of the first-day motions in their entirety.

8.    I am advised and believe that, on June 21, 2017, the Court entered written orders granting the Utility Motion, the Cash Management Motion, the Customer Programs Motion (on an interim basis, pending a final hearing set on August 3, 2017 at 9:30 a.m.), and the Lease Rejection Motion.    I am further advised and believe that, on June 22, 2017, the Court entered a written order granting the Wage Motion in its entirety.

9.    On June 23, 2017, the Debtor filed another motion (the "Prepetition Tax Motion") seeking the entry of a Court order authorizing, in the Debtor's discretion, the payment of prepetition sales, use and other similar taxes (the "Taxes") that are payable to various governmental taxing authorities.    I am advised and believe that, concurrently with the Prepetition Tax Motion, the Debtor filed an application for an order setting a hearing on the Prepetition Tax Motion on shortened notice.

10.    Following the filing of the Prepetition Tax Motion, the Office of the United States Trustee ("OUST") requested confirmation from the Debtor that the only Taxes proposed to be paid pursuant to the Prepetition Tax Motion were sales taxes.    The Debtor confirmed the foregoing.

11.    I am advised and believe that, on June 26, 2017, the Court entered a written order granting the Prepetition Tax Motion without requiring a hearing on such motion.

12.    To the best of my knowledge, the Debtor has complied with the requirements of the OUST by, among other things, filing its "7-Day Package" with the OUST on June 22, 2017 (followed by three separate supplements to the 7-Day Package filed on July 6, 2017 and July 13, 2017), opening seven (7) debtor-in-possession bank accounts with Bank of America, Hanmi Bank and Bank of Hope (collectively, the "DIP Accounts"), and closing the Debtor's pre-petition bank accounts (other than the store depository accounts related to currently operating retail stores, which accounts were authorized to remain open pursuant to the Cash Management Motion and the

Court's order granting such motion).

13. The Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs on July 13, 2017.

14. In addition, the Debtor filed its first monthly operating report (for the post-petition period ending June 30, 2017) on July 14, 2017.

15. Based on the foregoing, I believe the Debtor is in full compliance with all of its obligations and duties under the Bankruptcy Code.

16. It is my understanding and belief that the meeting of creditors in the Debtor's bankruptcy case is currently scheduled on July 28, 2017 at 9:00 a.m.

17. I am advised and believe that, on July 11, 2017, the OUST provided notice of its appointment of an Official Committee of Unsecured Creditors (the "Committee") in the Debtor's case. The Debtor has been informed that the Committee has retained the law firm of Lewis, Brisbois, Bisgaard & Smith LLP as its bankruptcy counsel and Province Inc. as its financial advisor.

18. The Debtor and its counsel have communicated with the Committee and its proposed professionals with respect to a number of issues relating to the Debtor's case. The Debtor hopes to work collaboratively with the Committee (as well as other creditors) to formulate an appropriate exit strategy which benefits all creditors and parties in interest in the Debtor's case.

19. The Debtor operates a chain of apparel stores under the name Papaya Clothing ("Papaya") that cater to teens, juniors and the "young at heart," and focuses on the 16 to 25 year old age group. As of the Petition Date, the Debtor was operating over 80 stores located in malls and shopping centers throughout the United States.

20. The Debtor is based in Commerce, California with a 75,000 square feet headquarters complex, which includes its warehouse and distribution facilities. As of the Petition Date, the Debtor employed a workforce of approximately of 1,300 employees. The merchandise sold in the Papaya stores is manufactured in the United States, and is housed in the Debtor's California warehouse where the Debtor's employees pack and ship the merchandise to the retail

locations.  Given the ever-changing fashion world, the Debtor has established a production line that can take a new design from start to finish within a two-week period in order to give the customer an impressive selection of the latest fashions.  In 2016, the Debtor generated annual gross revenues of more than $134 million.

21.    The Debtor has no secured debt.    To the best of my knowledge, none of the Debtor's cash is encumbered or constitutes the collateral of any creditor.

22.    Since the Petition Date, the Debtor has been operating its business in the ordinary course.

23.    As reflected in the Debtor's Statement of Financial Affairs, pre-petition, the Debtor was a party to a number of litigation matters.  To the best of my knowledge, all such litigation matters have been stayed by operation of the automatic stay.  To the best of my knowledge, there are a number of labor proceedings to which the Debtor is a party, which proceedings I understand may not be subject to the automatic stay and will therefore likely proceed.

24.    The Debtor had already closed a number of its less profitable retail store locations prior to the Petition Date, leaving open approximately 80 retail stores as of the Petition Date.  The Debtor is currently focused on evaluating the viability of the remaining retail stores and identifying other ways to decrease operational costs and increase profitability.

25.    Through its bankruptcy case, the Debtor intends to identify the core retail stores around which the Debtor can successfully reorganize, to expeditiously close those retail stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the retail stores in the ordinary course, all of which I believe will enable the Debtor to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

26.    I believe that, upon the completion of the Debtor's evaluation of the viability of its remaining retail stores and pending negotiations with the landlords of those retail stores determined

by the Debtor to be unprofitable or "borderline" locations, which evaluation and negotiations the Debtor hopes to complete by August 31, 2017, the Debtor will be in a position to formulate and file a feasible plan of reorganization.

27. The Debtor is committed to exiting from bankruptcy as quickly and cost-effectively as possible. I anticipate that the Debtor will be able to formulate and file a plan of reorganization in this case on or before October 13, 2017.

28. On June 30, 2017, the Debtor filed a motion seeking to establish August 30, 2017 as the bar date by which parties who wish to assert pre-petition claims against the Debtor must file and serve proofs of claim or be forever barred from asserting such pre-petition claims against the Debtor (the "Bar Date Motion").

29. Following the appointment of the Committee, proposed counsel for the Committee requested that the Debtor agree to a claims bar date later than the date proposed in the Bar Date Motion. The Debtors have proposed that September 15, 2017 be established as the claims bar date in the Debtor's case, which proposal I understand the Committee is currently considering. In the meantime, the Debtor has agreed not to lodge an order granting the Bar Date Motion until after July 21, 2017.

30. It is my understanding and belief that the Debtor's plan of reorganization will provide for a deadline by which objections to claims must be filed. Therefore, the Debtor requests that the Court not establish a deadline for filing objections to claims at this time. However, if the Court requires that such a deadline be set now, the Debtor respectfully requests that the deadline be set at least 120 days after the claims bar date (*i.e.*, on or after January 15, 2018 if the claims bar date is September 15, 2017).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of July, 2017, at Commerce, California.

Tae Yi, Declarant

**DECLARATION OF JULIET Y. OH, ESQ.**

I, Juliet Y. Oh, Esq., hereby declare as follows:

1. I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2. I am a partner at the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), proposed bankruptcy counsel to Cornerstone Apparel, Inc., d/b/a Papaya Clothing, the debtor and debtor in possession herein (the "Debtor"). I am licensed to practice law in the State of California and before this Court.

3. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 15, 2017 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession.

4. The Debtor filed its application to employ Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB") as its general bankruptcy counsel (the "LNBYB Application") on June 28, 2017. No objection to, or request for hearing on, the LNBYB Application has been filed to date. However, the Committee and its proposed counsel have requested additional time to review the LNBYB Application, and the Debtor has agreed not to lodge an order approving the LNBYB Application until after July 21, 2017. Attached as **Exhibit "1"** hereto is a "Professional Compensation and Fee Budget" for LNBYB, which was prepared by LNBYB.

5. The Debtor filed its application to employ The Law Offices Of Steven C. Kim & Associates (the "Kim Firm") as its special real estate, business and litigation counsel (the "Kim Firm Application") on June 29, 2017. No objection to, or request for hearing on, the Kim Firm Application has been filed to date. However, the Committee and its proposed counsel have requested additional time to review the Kim Firm Application, and the Debtor has agreed not to lodge an order approving the Kim Firm Application until after July 21, 2017. Attached as **Exhibit "2"** hereto is a "Professional Compensation and Fee Budget" for the Kim Firm, which was prepared by the Kim Firm and provided to LNBYB.

6. The Debtor filed its application to employ Young-Woo Park, CPA ("Park") as its accountant (the "CPA Application") on July 13, 2017. The objection period for the CPA Application has not yet expired. Attached as **Exhibit "3"** hereto is a "Professional Compensation and Fee Budget" for Park, which was prepared by Park and provided to LNBYB.

7. The Debtor's exclusive period to file a plan of reorganization under 11 U.S.C. § 1121 will expire on October 13, 2017. The Debtor anticipates filing a plan of reorganization in its bankruptcy case within its exclusivity period (*i.e.*, on or before October 13, 2017). Based on the foregoing, I estimate that the Debtor will be able to file a motion for an order approving the adequacy of a disclosure statement by October 13, 2017, and that the Debtor will be able to file a motion for an order confirming a plan of reorganization promptly after the entry of a Court approving a disclosure statement in the Debtor's case

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of July, 2017, at Los Angeles, California.

Juliet Y. Oh, Esq., Declarant

# EXHIBIT "1"

[Professional Compensation and Fee Budget
for LNBYB]

PROFESSIONAL COMPENSATION AND FEE BUDGET

**Case Number:** 2:17-bk-17292-VZ

**Case Name:** Cornerstone Apparel, Inc. d/b/a Papaya Clothing

**Date Commenced:** June 15, 2017

**Applicant Name:** Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB")

**Location:** Los Angeles, California

**Type of services to be rendered in LNBYB's capacity as general bankruptcy counsel include, but are not limited to:**

Advising the Debtor with regard to the requirements of the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules and the Office of the United States Trustee as they pertain to the Debtor; advising the Debtor with regard to certain rights and remedies of its bankruptcy estate and the rights, claims and interests of creditors; representing the Debtor in any proceeding or hearing in the Bankruptcy Court involving its estate unless the Debtor is represented in such proceeding or hearing by other special counsel; conducting examinations of witnesses, claimants or adverse parties and representing the Debtor in any adversary proceeding except to the extent that any such adversary proceeding is in an area outside of LNBYB's expertise or which is beyond LNBYB's staffing capabilities; preparing and assisting the Debtor in the preparation of reports, applications, pleadings and orders including, but not limited to, applications to employ professionals, interim statements and operating reports, initial filing requirements, schedules and statement of financial affairs, lease pleadings, and pleadings with respect to the Debtor's use, sale or lease of property outside the ordinary course of business; representing the Debtor in connection with negotiations relating to the Debtor's real property leases and executory contracts (to the extent requested by the Debtor); assisting the Debtor in the negotiation, formulation, preparation and confirmation of a plan of reorganization and the preparation and approval of a disclosure statement in respect of the plan; and performing any other services which may be appropriate in LNBYB's representation of the Debtor during its bankruptcy case.

**Category:**    Asset Analysis/Recovery/Disposition

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Timothy J. Yoo ( P) | $595 (@ 10 hrs) | $5,950 |
| Eve H. Karasik (P) | $575 (@ 40 hrs) | $23,000 |
| Juliet Y. Oh  (P) | $555 (@ 25 hrs) | $13,875 |
| Jeffrey S. Kwong  (A) | $375 (@ 30 hrs) | $11,250 |
| Stephanie Reichert/ Lisa Masse (PL) | $250 (@ 20 hrs) | $5,000 |

Expenses & Costs:      $5,000

**Total for Category:  $76,350**


**Category:**    Case Administration

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Timothy J. Yoo ( P) | $595 (@ 10 hrs) | $5,950 |
| Eve H. Karasik (P) | $575 (@ 30 hrs) | $17,250 |
| Juliet Y. Oh  (P) | $555 (@ 20 hrs) | $11,100 |
| Jeffrey S. Kwong  (A) | $375 (@ 40 hrs) | $15,000 |
| Stephanie Reichert/ Lisa Masse (PL) | $250 (@ 20 hrs) | $5,000 |

Expenses & Costs:      $5,000

**Total for Category:  $59,300**

**Category:**    Claims Administration and Objections

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Timothy J. Yoo ( P) | $595 (@ 10 hrs) | $5,950 |
| Eve H. Karasik (P) | $575 (@ 30 hrs) | $17,250 |
| Juliet Y. Oh  (P) | $555 (@ 20 hrs) | $11,100 |
| Jeffrey S. Kwong  (A) | $375 (@ 50 hrs) | $18,750 |
| Stephanie Reichert/ Lisa Masse (PL) | $250 (@ 20 hrs) | $5,000 |

Expenses & Costs:    $5,000

**Total for Category:  $63,050**


**Category:**    Employment/Fee Applications and Objections

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Eve H. Karasik (P) | $575 (@ 15 hrs) | $8,625 |
| Jeffrey S. Kwong  (A) | $375 (@ 40 hrs) | $15,000 |
| Stephanie Reichert/ Lisa Masse (PL) | $250 (@ 10 hrs) | $2,500 |

Expenses & Costs:    $2,500

**Total for Category:  $28,625**

**Category:** Plan and Disclosure Statement

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Timothy J. Yoo ( P) | $595 (@ 20 hrs) | $11,900 |
| Eve H. Karasik (P) | $575 (@ 60 hrs) | $34,500 |
| Juliet Y. Oh (P) | $555 (@ 25 hrs) | $13,875 |
| Jeffrey S. Kwong (A) | $375 (@ 50 hrs) | $18,750 |
| Stephanie Reichert/ Lisa Masse (PL) | $250 (@ 20 hrs) | $5,000 |

Expenses & Costs: $7,500

**Total for Category: $91,525**

*The figures provided herein are only **estimates**. Actual fees and expenses incurred may be different than estimated.

# EXHIBIT "2"

[Professional Compensation and Fee Budget
For Law Offices of Steven C. Kim & Associates]

PROFESSIONAL COMPENSATION AND FEE BUDGET

**Case Number:** 2:17-bk-17292-VZ

**Case Name:** Cornerstone Apparel, Inc. d/b/a Papaya Clothing ("Debtor")

**Date Commenced:** June 15, 2017

**Applicant Name:** The Law Offices of Steven C. Kim & Associates ("SCKA")

**Location:** Los Angeles, California

**TYPE OF LEGAL SERVICES TO BE PROVIDED BY SCKA AS GENERAL CORPORATE COUNSEL FOR DEBTOR INCLUDE, BUT ARE NOT LIMITED TO:**

- Advising the Debtor of legal ramifications of pending and subsequently filed lawsuits and claims;
- Engaging with the Labor Commissioner of Debtor's bankruptcy status and appearing on newly filed labor claim actions and filing of responsive answers and declarations;
- Providing general legal advice and legal defenses to Debtor from any lawsuits, claims, labor commissioner claims for unpaid wages, related to Debtor's business activities, labor relations, management issues, dealings with vendors, or investment practices;
- Coordinating and exchanging information and documents with Debtor's bankruptcy counsel, related to Debtor's pre-existing lawsuits and banktruptcy administration;
- Acting as an intermediary between claimants and Debtor for settlement purposes;
- Preparing communications, reports, pleadings and other documents related to Debtor's present and future business activities;
- Advising and assisting Debtor with reorganization efforts;
- Hiring and coordinating with out-of-state counsel for contracts and services;
- Negotiating new service agreements with vendors, service providers;
- Drafting corporate documents, including employment agreement, and all other agreements relating Debtor's business activities;
- Advising Debtor and participating in re-negotiatiation of all of the existing leases for modifications to reduce Debtor's rental obligations;

- Assisting Debtor's bankruptcy counsel with bankruptcy notice;
- Providing legal defense or filing lawsuits or claims on matters not stayed by bankruptcy;
- Revising employment contracts, handbooks and other operational documents;
- Ascertain and develop risk management strategy as part of reorganization efforts;
- Advise and assist with any viable asset protection framework(s);
- Develop strategies for protection and development of Debtor's intellectual properties; and
- Provide other legal services to be determined, as the need arises, from Debtor's future business activities.

**Category:** Asset Analysis/Recovery/Disposition

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Steven C. Kim | $240 (@ 50 hrs) | $12,000.00 |
| Allen S. Min | $240 (@ 20 hrs) | $4,800.00 |
| Henry Elyashar | $240 (@ 20 hrs) | $4,800.00 |

Expenses & Costs: $300.00

**Total for Category:** $21,900.00

**Category:**    Case Administration

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Steven C. Kim | $240 (@ 50 hrs) | $12,000.00 |
| Allen S. Min | $240 (@ 30 hrs) | $7,200.00 |
| Henry Elyashar | $240 (@ 20 hrs) | $4,800.00 |

Expenses & Costs:    $300.00

**Total for Category:** $24,000.00

**Category:**    Financing

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Steven C. Kim | $240 (@ 60 hrs) | $14,400.00 |
| Allen S. Min | $240 (@ 10 hrs) | $2,400.00 |
| Henry Elyashar | $240 (@ 10 hrs) | $2,400.00 |

Expenses & Costs:    $500.00

**Total for Category:** $19,200.00

**Category:**    Litigation and Labor Commissioner Claims (This category includes litigation which is otherwise not contemplated within the above-listed categories)

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Steven C. Kim | $240 (@ 200 hrs) | $48,000.00 |
| Allen S. Min | $240 (@ 50 hrs) | $12,000.00 |
| Henry Elyashar | $240 (@ 100 hrs) | $24,000.00 |

Expenses & Costs:    $3,500

**Total for Category:**  $87,500.00

NOTE:  The figures provided herein are only **estimates**.  Actual fees and expenses incurred may be different than estimated.

# EXHIBIT "3"

[Professional Compensation and Fee Budget
For Young-Woo Park, CPA]

PROFESSIONAL COMPENSATION AND FEE BUDGET

**Case Number:** 2:17-bk-17292-VZ

**Case Name:** Cornerstone Apparel, Inc. d/b/a Papaya Clothing

**Date Commenced:** June 15, 2017

**Applicant Name:** Young-Woo Park, CPA

**Location:** Los Angeles, California

**Type of Services already rendered, and to be rendered include, but are not limited to:**

Assist the Debtor with the preparation of tax returns, financial statements, and monthly operating reports during the pendency of the Debtor's bankruptcy case, and to provide the Debtor with tax advice on an as needed basis (including, without limitation, in connection with a plan of reorganization and disclosure statement).

**Category:** Business Operations

Professional

| Name/ Brief Description | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Young-Woo Park - Preparation of corporation income tax returns (Federal and states) | $150 (@ 160 hours) | $24,000 |
| Young-Woo Park - Preparation and communication for sales tax audit | $150 (@ 20 hours) | $3,000 |

**Total for Category: $27,000**

**Category:** Case Administration

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Young-Woo Park - Review and discuss financial statements. | $150 (@ 45 hours) | $6,750 |

**Total for Category: $6,750**

**Category:**      Plan and Disclosure Statement

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Young-Woo Park - Review and discuss Plan and Disclosure Statement issues. | $150 (@ 15 hours) | $2,250 |

**Total for Category:  $2,250**

*The figures provided herein are only **estimates**.  Actual fees and expenses incurred may be different than estimated herein.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **DEBTOR-IN-POSSESSION'S REPORT ON STATUS OF REORGANIZATION CASE; DECLARATIONS OF TAE YI AND JULIET Y. OH, ESQ. IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 19, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Dustin P Branch branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **John H Choi johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Richard T Davis rdavis@cafarocompany.com, lspahlinger@cafarocompany.com**
- **Ronald E Gold rgold@fbtlaw.com, joguinn@fbtlaw.com**
- **Courtney J Hull bk-chull@oag.texas.gov, sherri.simpson@oag.texas.gov**
- **Clifford P Jung clifford@jyllp.com, victoria@jyllp.com;karill@jyllp.com**
- **Eve H Karasik ehk@lnbyb.com**
- **John W Kim johnkim@jwklawgroup.com**
- **Jeffrey Kurtzman kurtzman@kurtzmansteady.com**
- **Noreen A Madoyan Noreen@MarguliesFaithLaw.com, Helen@MarguliesFaithlaw.com;Victoria@MarguliesFaithlaw.com;Brian@MarguliesFaithlaw.com**
- **Monserrat Morales mmorales@marguliesfaithlaw.com, Helen@marguliesfaithlaw.com;Victoria@marguliesfaithlaw.com;Brian@marguliesfaithlaw.com**
- **Kelly L Morrison kelly.l.morrison@usdoj.gov**
- **Juliet Y Oh jyo@lnbrb.com, jyo@lnbrb.com**
- **Kristen N Pate ggpbk@ggp.com**
- **Christopher E Prince cprince@lesnickprince.com, jmack@lesnickprince.com;mlampton@lesnickprince.com;cprince@ecf.courtdrive.com**
- **Lovee D Sarenas lovee.sarenas@lewisbrisbois.com**
- **Benjamin Seigel bseigel@greenbass.com, rholland@greenbass.com;ecfnotification@greenbass.com**
- **Michael A Shakouri mshakouri@goodkinlynch.com, paralegal@goodkinlynch.com**
- **Ronald M Tucker rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov**
- **Ashley R Wedding awedding@fabozzimillerlaw.com, dsandoval@fabozzimillerlaw.com**
- **Timothy J Yoo tjy@lnbyb.com**

**2. SERVED BY UNITED STATES MAIL**: On **July 19, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 19, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
Hon. Vincent P. Zurzolo
United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street, Suite 1360 / Ctrm 1368
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 19, 2017 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Cornerstone Apparel, Inc. (8096)
RSN, Debtor, OUST, Top 20,
Committee, and Alleged Secureds

Cornerstone Apparel, Inc.
5807 Smithway Street
Los Angeles, CA 90040

Kelly L Morrison
United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

Ambiance Apparel
2415 E. 15th Street
Los Angeles, CA 90021

Bank of America, N.A.
2059 Northlake Parkway 3 North
Tucker, GA 30084

Eklecco Newco, LLC
4 Clinton Square
Syracuse, NY 13202

Iris / K & L
Wholesales, Corp.
3317 East 50th Street
Vernon, CA 90058

edgemine, Inc.
1801 E. 50th Street
Los Angeles, CA 90058

Wax Jean
Attn: Steve Noh
930 Towne Ave.
Los Angeles, CA 90021

DNA Couture, Inc.
747 E. 10th St., #102-103
Los Angeles, CA 90021

Belinda / X.E.N.O.S
1138 S. Crocker St.
Los Angeles, CA 90021

Itsme Jean, Inc.- No Factor
1100 S. San Pedro St., #L-1
Los Angeles, CA 90015

Heart & Hips
2424 E. 26th St.
Vernon, CA 90058

Style Melody, Inc. / Lovetree
110 E. 9th Street, Suite #A-1126
Los Angeles, CA 90079

Active USA Inc.
1807 E. 48th Place
Los Angeles, CA 90058

Blossom Inc.
P.O. Box 76327
Los Angeles, CA 90076

Miss Avenue
776 E. 10th Street, #121
Los Angeles, CA 90074-0952

Danbee, Inc.
3360 E. Pico Blvd
Los Angeles, CA 90023

Papermoon / J & E
Trading USA, LLC
1100 S. San Pedro St., #A-4
Los Angeles, CA 90074-1084

Parkway Plaza LP
c/o Starwood Capital Group
591 West Putnam Avenue
Greenwich, CT 06830

Parks at Arlington LLC
110 N. Wacker Dr.
Chicago, IL 60606

HYFVE, Inc. (Double Zero)
Dept. LA 24406
Pasadena, CA 91185-4406

Committee Counsel
Richard Lauter
Lewis, Brisbois, Bisgaard & Smith LLP
550 West Adams Street, Suite 300
Chicago, IL 60661

Committee Counsel
Lovee D. Sarenas
Lewis, Brisbois, Bisgaard & Smith LLP
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071

Fashion Magazine Inc.
dba Fashion Art
c/o William Waneo Ha, CEO
1100 S. San Pedro St., D-l
Los Angeles, CA 90015

Xenos Fashion Inc. dba Belinda
1616 E. 14th Street
Los Angeles, CA 90021

Reflex Trading Inc.
c/o Richard H. Song, Owner
1100 S. San Pedro Street, #D-4
Los Angeles, CA 90015

GGP Limited Partnership
Attn: Julie Minnick Bowden, National
Bankruptcy Manager
110 North Wacker Drive
Chicago, IL 60606

Ivan Gold, Esq.
Allen Matkins Leck Gamble & Mallory,
LLP
Three Embarcadero Center, 12th Fl.
San Francisco, CA 94111-4015

John Lee
3731 Wilshire Blvd., Suite 940
Los Angeles, CA 90010

Simon Property Group
225 West Washington Street
Indianapolis, IN 46204

Ronald M. Tucker
225 West Washington Street
Indianapolis, IN 46204

Daniela Lee, General Manager
dba Chocolate USA
1150 Crocker Street
Los Angeles, CA 90021

Finance One, Inc.
c/o Stephen Kim, Senior VP
801 S. Grand Avenue, Ste. 1000
Los Angeles, CA 90017

Tony Kim, Esq.
Kim Park Choi & Yi
3435 Wilshire Blvd., Ste. 2150
Los Angeles, CA 90010

Hana Financial
c/o Kevin Thomas,
SVPlCustomer Credit Mgr.
1000 Wilshire Boulevard
Los Angeles, CA 90017

Alliance U.S.A., Inc.
dba Ambiance Apparel
c/o In Y. Noh, COO
2415 E. 15th Street
Los Angeles, CA 90021