TIMOTHY J. YOO (SBN 155531)
EVE H. KARASIK (SBN 155356)
JULIET Y. OH (SBN 211414)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: tjy@lnbyb.com, ehk@lnbyb.com, jyo@lnbyb.com, jsk@lnbyb.com

Attorneys for Chapter 11 Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-bk-17292-VZ |
| CORNERSTONE APPAREL, INC. | Chapter 11 |
| Debtor. | **DEBTOR'S APPLICATION TO EMPLOY SIERRACONSTELLATION PARTNERS, LLC AS FINANCIAL ADVISOR TO DEBTOR PURSUANT TO 11 U.S.C. §§ 327 AND 330; DECLARATION OF WINSTON MAR IN SUPPORT THEREOF** |
| | [No Hearing Required – Local Bankruptcy Rule 2014-1(b)] |

1

Cornerstone Apparel, Inc.   d/b/a Papaya Clothing, a California corporation and the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), hereby submits this application (the "Application") for Court approval of its employment of SierraConstellation Partners, LLC ("SCP") as its financial advisor, effective as of September 5, 2017, upon the terms and conditions described below.   In support of this Application, the Debtor submits the annexed Declaration of Winston Mar (the "Mar Declaration"), and respectfully represents as follows:

**A.     Background.**

1.     The Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 15, 2017 (the "Petition Date").   The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.     Cornerstone Apparel, Inc. operates a chain of apparel stores under the name Papaya Clothing ("Papaya") that cater to teens, juniors and the "young at heart," and focuses on the 16 to 25 year old age group. Cornerstone has approximately 80 stores located in malls and shopping centers throughout the United States. The Papaya concept is to provide shoppers with "great price, great service," and an "innovative, upscale and welcoming atmosphere."

3.     Cornerstone is based in Commerce, California with a 75,000 square feet headquarters complex, which includes its warehouse and distribution facilities.    The merchandise sold in the Papaya stores is manufactured in the United States, and is housed in Cornerstone's California warehouse where Cornerstone's employees pack and ship the merchandise to the retail locations. Given the ever-changing fashion world, Cornerstone has established a production line that can take a new design from start to finish within a two-week period in order to give the customer an impressive selection of the latest fashions.

4.     Cornerstone's ownership and management have over twenty-five years' experience in operating retail clothing business focusing primarily in the junior and petite apparel markets. This ownership and management team is responsible for the prior successes of

1    retailers Everblue Casuals and Career Image. Papaya consistently leads in its retail category in

2    sales per square foot of retail space.

3           5.     The Debtor employs a workforce of approximately of 1,300 employees. In 2016,

4    the Debtor generated annual gross revenues of more than $134 million. The Debtor has no

5    secured debt.

6           6.     After opening its first retail store approximately 18 years ago in 1999, the Debtor

7    substantially expanded its business operations to encompass a total of approximately 80 retail

8    stores throughout the United States by 2017. Approximately 50 of these new retail stores were

9    opened within the last six (6) years.  The expansion effort took a heavy financial toll on the

10   business operations of the Debtor as a whole as it incurred construction and other "start up"

11   costs with the opening of each new store as well as a significant increase in operating expenses

12   typically associated with a retail store chain operation.

13          7.     The high cost of expansion combined with decreasing store sales as a result of a

14   general industry-wide shift in consumer shopping preferences from in-store to online shopping,

15   and the resulting increased competition, has left Cornerstone with insufficient liquidity to meet

16   all of its financial obligations. While the Debtor has already closed a number of its less

17   profitable retail store locations, leaving open approximately 80 retail stores as of the Petition

18   Date, the Debtor requires time to evaluate the viability of the remaining retail stores and identify

19   other ways to decrease operational costs and increase profitability.  In order to preserve the

20   Debtor's rights under its lease agreements and to have an opportunity to restructure its business

21   and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

22          8.     Through its bankruptcy case, the Debtor intends to identify the core Retail Stores

23   around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores

24   which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful

25   rent concessions from the landlords, to identify and implement reasonable cost cutting measures

26   and to maximize the value of the Debtor's inventory by continuing its retail operations at the

27   Retail Stores, all of which the Debtor believes will enable it to formulate and pursue

28

1    confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt

2    in a cohesive and efficient manner while continuing to operate its longstanding business.

3    **B.    Employment of Financial Advisor And The Proposed Terms Thereof.**

4            9.      The Debtor requires the services of a financial advisory firm to render the

5    following types of professional services within the context of its pending Chapter 11 case:

6                   i.      Evaluate near-term business plan/financial forecast;

7                   ii.     Evaluate and/or assist in developing four-wall (store-level) contribution

8    analysis;

9                   iii.    Assist with evaluating store footprint and store closure scenarios;

10                  iv.     Perform analysis of current inventory composition;

11                  v.      Evaluate and/or assist in developing a liquidation analysis;

12                  vi.     Provide advice on restructuring alternatives, including but not limited to,

13   any asset sales or a plan of reorganization;

14                  vii.    Render such other restructuring, general business consulting or other

15   assistance as may be requested; and

16                  viii.   Assist in the preparation of a plan of reorganization.

17           10.     The Debtor has decided that SCP is the ideal financial advisory firm to assist the

18   Debtor, taking into account SCP's reputation, experience (particularly in Chapter 11 bankruptcy

19   cases), skill level, and cost.   The Debtor believes that SCP possesses the resources and

20   qualifications to provide the financial advisory services contemplated herein in an efficient and

21   cost-effective manner.  The Debtor seeks to employ SCP as its financial advisor, at the expense

22   of the Debtor's bankruptcy estate, and to have the Debtor's employment of SCP be deemed

23   effective as of September 5, 2017.

24           11.     SCP is an interim management, consulting and advisory firm that specializes in

25   corporate restructurings, operations improvement, litigation analytics, valuations and bankruptcy

26   case management services.   SCP has extensive experience working with and for distressed

27   companies in complex financial and operational restructurings, both out-of-court and in Chapter

28   11 proceedings throughout the United States.  SCP professionals have advised debtors, creditors

4

and equity constituents in numerous reorganizations, which advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and improvements, and the provision of interim management.  SCP has advised companies with annual sales ranging from $20 million to over $800 million in a broad range of industries.  SCP is nationally recognized as one of the preeminent turnaround firms and is well respected in the turnaround industry.  The Debtor expects that Winston Mar and Jeff Nerland will be the professionals at SCP primarily responsible for providing financial advisory services to the Debtor in this case.  True and correct copies of the professional biographies of the foregoing professionals are collectively attached as **Exhibit "B"** to the Mar Declaration annexed hereto.

12.    The Debtor seeks to employ SCP under the terms and conditions set forth in a written engagement agreement between the Debtor and SCP (the "Engagement Agreement"), in substantially the form attached as **Exhibit "A"** to the Mar Declaration annexed hereto.  In summary, the Engagement Agreement provides that:

    i.    SCP shall be compensated on an hourly basis at its standard hourly billing rates, which range from $100 – $595 depending on the specific skills, abilities and experience represented by each professional.  The foregoing hourly billing rates are revised periodically in the ordinary course of SCP's business.

    ii.    SCP shall provide an invoice for services to the Debtor on a monthly basis.  SCP will seek Court authority to be paid from the Debtor's estate for any and all fees incurred and expenses advanced by SCP.

    iii.    SCP shall be entitled to reimbursement of its reasonable out-of-pocket expenses incurred in connection with its representation of the Debtor, including, without limitation, expenses related to airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs.

    iv.    SCP shall be indemnified by the Debtor to the maximum extent permitted by law.

        v.      The Engagement Agreement and SCP's retention as financial advisor to the Debtor may be terminated upon thirty (30) days' prior written notice to the other party by either party in its sole discretion.

A listing of the currently hourly billing rates for SCP's professionals is provided in page 2 of the Engagement Agreement.  Further, SCP will seek reimbursement of expenses in accordance with the rates set forth in the guidelines promulgated by the Office of the United States Trustee.

13.      SCP has not been paid a retainer or any other monies by the Debtor or any other entity in connection with its proposed representation of the Debtor in this bankruptcy case.  SCP has not received any lien or other interest in property of the Debtor or of a third party to secure payment of SCP's fees or expenses incurred in this bankruptcy case.

14.      SCP will seek Court authority to be paid from the Debtor's estate for any and all fees incurred and expenses advanced by SCP.  SCP recognizes that the payment of any such fees and expenses will be subject to further Court order after notice and a hearing pursuant to 11 U.S.C. § 330.

15.      SCP understands the provisions of 11 U.S.C. §§ 327, 330 and 331 which require, among other things, Court approval of the Debtor's employment of SCP and of all fees and reimbursement of expenses that SCP will receive from the Debtor and the Debtor's estate.

**C.**      **Disclosures Pursuant To Rule 2014 Of The Federal Rules Of Bankruptcy Procedure.**

16.      As noted above, SCP has not received any lien or other interest in property of the Debtor or of a third party to secure payment of SCP's fees or expenses incurred in this case.

17.      SCP has not shared or agreed to share its compensation for representing the Debtor with any other person or entity, except among its members.

18.      SCP will be maintaining time sheets and billing records in connection with its representation of the Debtor, and SCP will provide monthly billing statements to the Debtor that will set forth the amount of fees and expenses incurred by SCP during the previous month.

19.      SCP is not a creditor, an equity security holder or an insider of the Debtor.

20.      SCP does not have any previous connection with any insider of the Debtor or any insider of an insider of the Debtor.

21.     SCP is not and was not an investment banker for any outstanding security of the Debtor.  SCP has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

22.     Neither SCP nor any member of SCP is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

23.     As set forth in the Mar Declaration annexed hereto, to the best of Mr. Mar's knowledge, SCP does not hold or represent any interest materially adverse to the interest of the Debtor's estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

24.     As set forth in the Mar Declaration annexed hereto, to the best of Mr. Mar's knowledge, SCP does not hold or represent any interest adverse to the Debtor or the Debtor's estate, and SCP is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.    Although Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor in this case, has worked with SCP on other matters which are unrelated to the case herein, the Debtor and SCP respectfully submit that the professional relationship between LNBYB and SCP in connection with other unrelated matters should not preclude the Debtor's employment of SCP in this case as both LNBYB and SCP will be able to represent the Debtor in a professional and unbiased manner.  Other than as set forth herein, to the best of Mr. Mar's knowledge, SCP has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

25.     For disclosure purposes only, Mr. Nerland of SCP served as chief restructuring officer for the debtor in the bankruptcy case of Naartjie Custom Kids, Inc. (Bankr. D. Utah, Case No. 2:14-bk-29666), where Ron Tucker from Simon Property Group Texas LP ("Simon") was chairman of the official committee of unsecured creditors.  Further, prior to when Mr. Nerland

1  joined SCP, Mr. Nerland and Mr. Tucker had previous contacts in the bankruptcy case of

2  Merksamer Jewelers.  Neither of these bankruptcy cases is related to the Debtor's bankruptcy

3  case.  While SCP believes that the foregoing has no impact on the proposed representation

4  herein, such disclosure is being made in an overabundance of caution.

5       26.     The Debtor believes that its employment of SCP upon the terms and conditions set

6  forth above is in the best interests of the Debtor's estate.

7       27.     A true and correct copy of the Notice of this Application, which was filed and

8  served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached as **Exhibit "C"** to the

9  Mar Declaration annexed hereto.

10       **WHEREFORE,** the Debtor respectfully requests that the Court approve the Debtor's

11  employment of SCP as its financial advisor, effective as of September 5, 2017, upon the terms

12  and conditions set forth above.

13  Dated: September 18, 2017     CORNERSTONE APPAREL, INC.

16  By:    Tae Y. Yi

17      President, Chief Financial Officer, and Secretary of
    Cornerstone Apparel, Inc.

18  Submitted by:

19  LEVENE, NEALE, BENDER, YOO
   & BRILL, L.L.P.

21  By  /s/ Jeffrey S. Kwong
    TIMOTHY J. YOO

22      EVE H. KARASIK
    JULIET Y. OH

23      JEFFREY S. KWONG
    Attorneys for Chapter 11 Debtor

24      and Debtor in Possession

25

26

27

28

1

2
### DECLARATION OF WINSTON MAR

3
I, Winston Mar, hereby declare as follows:

4
1.    I am over 18 years of age.  Except where otherwise stated, I have personal

5
knowledge of the facts set forth below and, if called to testify, I could and would testify

6
competently thereto.

7
2.    I am a Partner and Managing Director of SierraConstellation Partners, LLC

8
("SCP"), which maintains a business office located at 400 S. Hope St. Suite 1050, Los Angeles,

9
California 90071.

10
3.    SCP is an interim management, consulting and advisory firm that specializes in

11
corporate restructurings, operations improvement, litigation analytics, valuations and

12
bankruptcy case management services.  SCP has extensive experience working with and for

13
distressed companies in complex financial and operational restructurings, both out-of-court and

14
in Chapter 11 proceedings throughout the United States.  SCP professionals have advised

15
debtors, creditors and equity constituents in numerous reorganizations, which advisory services

16
have included financial analysis and budgeting, forecasting, cash management, operational

17
assessments and improvements, and the provision of interim management.  SCP has advised

18
companies with annual sales ranging from $20 million to over $800 million in a broad range of

19
industries.  SCP is nationally recognized as one of the preeminent turnaround firms and is well

20
respected in the turnaround industry.  I expect that Jeff Nerland and I will be the professionals

21
at SCP primarily responsible for providing financial advisory services to the Debtor in this

22
case.  True and correct copies of the professional biographies of the foregoing professionals are

23
collectively attached as **Exhibit "B"** hereto.

24
4.    Cornerstone Apparel, Inc.  d/b/a Papaya Clothing, a California corporation and

25
the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the

26
"Debtor"), has requested that SCP serve as its financial advisor in connection with its pending

27
Chapter 11 bankruptcy case.  SCP has agreed to represent the Debtor in such capacity, subject

28
to the approval of the Bankruptcy Court.

5.      The Debtor seeks to employ SCP under the terms and conditions set forth in a written engagement agreement between the Debtor and SCP (the "Engagement Agreement"), in substantially the form attached as **Exhibit "A"** hereto.  In summary, the Engagement Agreement provides that:

i.      SCP shall be compensated on an hourly basis at its standard hourly billing rates, which range from $100 – $595 depending on the specific skills, abilities and experience represented by each professional.  The foregoing hourly billing rates are revised periodically in the ordinary course of SCP's business.

ii.     SCP shall provide an invoice for services to the Debtor on a monthly basis. SCP will seek Court authority to be paid from the Debtor's estate for any and all fees incurred and expenses advanced by SCP.

iii.    SCP shall be entitled to reimbursement of its reasonable out-of-pocket expenses incurred in connection with its representation of the Debtor, including, without limitation, expenses related to airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs.

iv.     SCP shall be indemnified by the Debtor to the maximum extent permitted by law.

v.      The Engagement Agreement and SCP's retention as financial advisor to the Debtor may be terminated upon thirty (30) days' prior written notice to the other party by either party in its sole discretion.

A listing of the currently hourly billing rates for SCP's professionals is provided in page 2 of the Engagement Agreement.  Further, SCP will seek reimbursement of expenses in accordance with the rates set forth in the guidelines promulgated by the Office of the United States Trustee.

6.      SCP has not been paid a retainer or any other monies by the Debtor or any other entity in connection with its proposed representation of the Debtor in its bankruptcy case.  SCP has not received any lien or other interest in property of the Debtor or of a third party to secure payment of SCP's fees or expenses incurred in the Debtor's bankruptcy case.  SCP does not hold a pre-petition claim against the estate; and has not represented, is not representing, and

1 | does not intend to represent any related debtor in a bankruptcy case in this or any other court.

2 |       7.    SCP will seek Court authority to be paid from the Debtor's estate for any and all

3 | fees incurred and expenses advanced by SCP.  SCP recognizes that the payment of any such

4 | fees and expenses will be subject to further Court order after notice and a hearing pursuant to

5 | 11 U.S.C. § 330.

6 |       8.    SCP will be maintaining time sheets and billing records in connection with its

7 | representation of the Debtor, and SCP will provide monthly billing statements to the Debtor

8 | that will set forth the amount of fees and expenses incurred by SCP during the previous month.

9 |       9.    I understand the provisions of 11 U.S.C. §§ 327, 330 and 331 which require,

10 | among other things, Court approval of the Debtor's employment of SCP and of all fees and

11 | reimbursement of expenses that SCP will receive from the Debtor and the Debtor's estate.

12 | Further, I am familiar with the Bankruptcy Code, the Bankruptcy Rules, and the Local

13 | Bankruptcy Rules, and SCP shall comply with them.

14 |     10.    SCP has not shared or agreed to share its compensation for representing the

15 | Debtor with any other person or entity, except among its members.

16 |     11.    SCP is not a creditor, an equity security holder or an insider of the Debtor.

17 |     12.    SCP does not have any previous connection with any insider of the Debtor or

18 | any insider of an insider of the Debtor.

19 |     13.    SCP is not and was not an investment banker for any outstanding security of the

20 | Debtor.  SCP has not been within three years before the Petition Date an investment banker for

21 | a security of the Debtor, or an attorney for such an investment banker in connection with the

22 | offer, sale or issuance of any security of the Debtor.

23 |     14.    Neither SCP nor any member of SCP is, nor was, within two years before the

24 | Petition Date, a director, officer or employee of the Debtor or of any investment banker for any

25 | security of the Debtor.

26 |     15.    To the best of my knowledge, SCP does not hold or represent any interest

27 | materially adverse to the interest of the Debtor's estate, or of any class of creditors or equity

28 | security holders, by reason of any direct or indirect relationship to, connection with, or interest

in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

16.    To the best of my knowledge, SCP does not hold or represent any interest adverse to the Debtor or the Debtor's estate, and SCP is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Although SCP has worked with Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor, on other matters which are unrelated to the Debtor's case, I do not believe that the professional relationship between LNBYB and SCP in connection with other unrelated matters should preclude the Debtor's employment of SCP in this case as I believe both LNBYB and SCP will be able to represent the Debtor in a professional and unbiased manner.  Other than as set forth herein, to the best of my knowledge, SCP has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

17.    For disclosure purposes only, Mr. Nerland of SCP served as chief restructuring officer for the debtor in the bankruptcy case of Naartjie Custom Kids, Inc. (Bankr. D. Utah, Case No. 2:14-bk-29666), where Ron Tucker from Simon Property Group Texas LP ("Simon") was chairman of the official committee of unsecured creditors.  Further, I have been informed and believe that, prior to when Mr. Nerland joined SCP, Mr. Nerland and Mr. Tucker had previous contacts in the bankruptcy case of Merksamer Jewelers.  Neither of these bankruptcy cases is related to the Debtor's bankruptcy case.  While SCP believes that the foregoing has no impact on the proposed representation herein, such disclosure is being made in an overabundance of caution.  While I believe that the foregoing has no impact on the proposed representation herein, such disclosure is being made in an overabundance of caution.

18.    I believe that the Debtor's proposed employment of SCP upon the terms and conditions set forth above and in the Engagement Agreement is in the best interests of the Debtor's bankruptcy estate.

19.    A true and correct copy of the Notice of this Application, which I am advised and believe was filed and served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is

1  attached hereto as **Exhibit "C"**.

2      I declare and verify under penalty of perjury under the laws of the United States of

3  America that the foregoing is true and correct to the best of my knowledge.

4      Executed on this ___18th___ day of September, 2017, at Los Angeles, California.

6                  Winston Mar, Declarant

# EXHIBIT "A"



SIERRACONSTELLATION
P A R T N E R S

September 14, 2017

Cornerstone Apparel, Inc.
5807 Smithway Street
Los Angeles, California 90040
Attention: Mr. Tae Yi

Re: Terms of Engagement of SierraConstellation Partners LLC

Dear Mr. Tae Yi:

We are pleased that Cornerstone Apparel, Inc. d/b/a Papaya Clothing ("you", or "Company") has engaged SierraConstellation Partners, LLC ("SCP") to perform the Services (as defined below). This letter (the "Engagement Letter") together with the Standard Terms and Conditions (the "Standard Terms") annexed hereto and incorporated by reference (collectively, the "Agreement") sets forth the agreed upon terms of our engagement (the "Engagement").[1]

We understand that the Company filed a voluntary petition (the "Bankruptcy Case") for relief under Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on June 15, 2017 in the United States Bankruptcy Court for the Central District of California – Los Angeles Division (the "Bankruptcy Court") and that the Company is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. You shall, by executing this letter, engage SCP for the purposes of providing business advice and consultation to you regarding the Company's current challenges. We will also work with you toward the implementation of whatever strategies are most appropriate to achieve your objectives. Our services ("Services") will include, but not be limited to, the following areas:

- Evaluate near-term business plan/financial forecast;
- Evaluate and/or assist in developing four-wall (store-level) contribution analysis;
- Assist with evaluating store footprint and store closure scenarios;
- Perform analysis of current inventory composition;
- Evaluate and/or assist in developing a liquidation analysis;
- Provide advice on restructuring alternatives, including but not limited to, any asset sales or a plan of reorganization;
- Render such other restructuring, general business consulting or other assistance as may be requested; and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Standard Terms.

Standard Terms & Conditions
September 14, 2017

- Assist in the preparation of a plan of reorganization.

In addition, SCP shall provide such other services as may be agreed to by SCP and the Company based on discussions with you as the engagement progresses and additional information is obtained. We shall have no responsibility to update our Services without a written agreement.

Company is retaining Winston Mar of SCP to serve as Engagement Principal (the "Engagement Principal") and maintain overall responsibility for the engagement on behalf of SCP. The Engagement Principal shall select and assign employees of SCP to perform the Services (such employees, together with the Engagement Principal, the "SCP Personnel").

SCP's fees for the Services, including, without limitation, the services of Mr. Mar as Engagement Principal at the hourly rate of $595, exclusive of reasonable out of pocket travel costs, etc. All professional fees and expenses will be billed to you weekly and are payable upon receipt.

| | |
|---|---|
| Winston Mar as Engagement Principal: | $595/hr. |
| Jeff Nerland as Senior Director: | $450/hr. |
| Director: | $300/hr. to $375/hr. |
| Senior Associates: | $200/hr. to $300/hr. |
| Admin Staff: | $100/hr. |

If the foregoing is acceptable to you, please sign this letter and initial the terms and conditions and return to me. This Agreement will be effective, and we will commence providing the Services, on the date that we receive this letter counter-signed by you (the "Effective Date"). If you have any questions, please call me at (562) 858-2200.

We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

SierraConstellation Partners LLC

By: _____
Winston Mar

Agreed and Accepted by:

Cornerstone Apparel, Inc. d/b/a Papaya Clothing

By: _____
[Authorized Signatory]

2

Standard Terms & Conditions
September 14, 2017

## Standard Terms & Conditions

The terms and conditions set forth below (the "Standard Terms") are incorporated by reference into that certain Engagement Letter by and between SierraConstellation Partners, LLC ("SCP") and Cornerstone Apparel, Inc. d/b/a Papaya Clothing (the "Company") dated as of September 14, 2017 (the "Engagement Letter" and together with the Standard Terms, the "Agreement").

FEES AND EXPENSES

1.      Invoices.  SCP will provide an invoice for Services to Company on a monthly basis (the "Invoice").  Each Invoice will provide sufficient details identifying the Services rendered and the Reimbursable Expenses incurred.

2.      Payment of Invoices.  Payment of each Invoice is due upon receipt and shall be made upon authorization or approval of the Bankruptcy Court.  If any Invoice is not paid in full when due, you agree that SCP has the rights and options, in its discretion until all outstanding Invoices are paid in full: (i) to suspend or terminate Services and/or (ii) withold delivery of Services, testimony, Deliverables (as defined herein), reports or data (written or oral); in which event you agree that SCP will not be liable for any resulting losses, damages or expenses in connection with or resulting from such suspension, withholding or termination of Services or any delay in completion of or performance of the Services or compliance with any deadlines or timelines related to the Services.

3.      Adjustment of Hourly Rates.  In the ordinary course of business, SCP revises the hourly rates of SCP Professionals set forth in the Engagement Letter (the "Hourly Rates") to reflect changes in responsibilities, increased experience, geographical differentials and increased costs of providing the Services (collectively, the "Adjusted Rates").Company agrees to pay the Adjusted Rates as and when same are implemented.

4.      Reimbursable Expenses.  SCP will be reimbursed timely by you for any and all reasonable, actual out-of-pocket expenses incurred in connection with or related to the Services, including but not limited to airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs (colletively, the "Reimbursable Expenses").

5.      Taxes.  Company shall be responsible for any taxes imposed on the Services or on the Engagement, other than taxes imposed by employment withholding for SCP Personnel or on SCP income or property.

INFORMATION, ASSISTANCE AND DELIVERABLES

6.      Information, Access to Information.  The Company shall use all reasonable efforts to: (i) provide SCP Personnel with access to Company management and other representatives of the Company; and (ii) furnish all data, material, and other information concerning the business, assets, liabities, operations, cash flows, properties, financial condition and prospects of the Company that SCP Personnel request in connection with and in furtherance of their performance of the Services.  SCP Personnel shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished to SCP and SCP Personnel by or on behalf of the Company and otherwise reviewed by SCP Personnel in connection with the Services.  Company acknowledges and agrees that SCP Personnel are not responsible for the accuracy or completeness of such information and shall not be responsible to Company or any third party for any inaccuracies or omissions therein.  SCP is under no obligation to update data submitted to SCP or to review any other areas of the Company's business or operations unless specifically set forth in the Engagement Letter or as mutually agreed by and between Company and SCP in writing.  The source of such information, whether the Company management or other third party, as the case may be, shall be responsible for any and all financial information provided to SCP pursuant to this Agreement.  Furthermore, unless specifically retained to do so, SCP will not independently examine, compile or verify any financial information provided to SCP by the Company and/or Company management, as the case may be.  You shall use reasonable skill, care and attention to ensure that all information and documentation we may reasonably require is provided to us on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You shall also notify us promptly  if you subsequently learn that the information provide is outdated, incorrect or in accurate or otherwise should not be relied upon; and, in addition, you may not rely upon any Deliverable that contains outdated, incorrect or inaccurate information which you know or have reason to believe is outdated, incorrect or inaccurate.

7.      Cooperation and Responsiblities.  Company shall cooperate with SCP in the performance of the Services.  The Company shall be responsible for, among other things (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to SCP for purposes of the performance of the Services, (c) designating a competent, responsible person to oversee the Services  (d) evaluating the adequacy and results of the Services, (e) accepting responsibility for the results of the Services, and (f) establishing and maintaining internal controls, including monitoring ongoing activities. SCP's performance is dependent upon the timely and effective satisfaction of Company's responsibilities hereunder and timely decisions and approvals of Company in connection with the Services.

8.      Forward Looking Statements.  You understand that the Services may include the preparation of projections and other forward-looking statements, and numerous factors can affect the acutal results of the Company's operations, which may materially and adversely differ from those projections and statements.  Moreover, SCP will be relying upon information provided by the Company in the preparation of those projections and other forward-looking statements.

9.      Deliverables.  The tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") are complete only when presented in their entirety and only for the purpose stated therein.  Furthermore, (i) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (ii) SCP will not provide any legal advice or address any questions of law; and (iii) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA"), the Public Company Accounting Oversight Board (the "PCAOB"), or other state or federal professional or regulatory body.  Upon full payment to SCP hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified in the Deliverables shall become the property of Company.

3

Standard Terms & Conditions
September 14, 2017

LIMITATIONS ON SERVICES

10.    **Use and Purpose of Advice and Deliverables.** Any advice given, communication (oral or written), report or Deliverable issued by SCP is provided solely for the use and benefit of Company and only in connection with the Services. Unless required by law or with the prior consent of SCP, Company shall not share or disclose any advice given, communication, report or Deliverable to any third party (a "Third Party") or refer to the Services. Neither the Services nor any Deliverables are intended for the express or implied benefit of any Third Party. Unless otherwise agreed to in writing by SCP, no Third Party is entitled to rely in any manner or for any purpose on the Services or Deliverables. Regardless of whether consent has been provided by SCP or disclosure is mandated as a matter of law or disclosure is made in violation of the Standard Terms, under no circumstances shall SCP assume any responsibility to any Third Party to whom any such advice, communication, report or Deliverable is disclosed or otherwise made available. The Services and this Engagement do not create privity between SCP and any Third Party.

11.    **No Audit, Review or Compilation.** Company acknowledges and agrees that SCP is not being retained to, and SCP Personnel are not being requested to, perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of AICPA, the SEC or other state or federal professional or regulatory body.

12.    **No Assurances.** The Services will not result in the issuance of any written or oral communications by SCP to Company or any Third Party expressing any opinion, conclusion, or any other form of assurance with respect to, among other things, accounting policies, financial data, financial statements and related footnotes, appropriate application of generally accepted accounting principles, disclosure, operating or internal controls, compliance with the rules and regulations of the SEC or the PCAOB, compliance with the Sarbanes-Oxley Act of 2002 and related rules and regulations, or any other matters our services cannot be relied upon to disclose errors or fraud should they exist. The Services to be provided by SCP will **not** include any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. Company expressly acknowledges that SCP does not guarantee, warrant, or otherwise provide any assurances regarding the outcome of any of Company's strategies or objectives as set forth in this Agreement.

13.    **No Assessment of Other Professionals Work.** The Services may include access to the work of other professional advisors or to financial statements or financial information or data reported on by such other professional advisors. Company agrees that such access is not for the purpose of affirming or evaluating the procedures or professional standards used by such other professional advisors. In this regard, we call your attention to the possibility that other professional advisors may perform procedures concerning the same information or data, and perhaps the same accounts and records, and reach different observations than SCP for a variety of reasons, including the possibilities that additional or different information or data might be provided to them that was not provided to SCP, that they might perform different procedures from SCP, or that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

14.    **Strategic Decisions.** Neither SCP nor any SCP Personnel, assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. SCP and SCP Personnel shall be responsible for implementation only of the Services and only to the extent and in the manner directed and authorized by Company.

15.    **Limitations on Warranties.** This is a services engagement. SCP warrants that it shall perform the Services in good faith and with due professional care. SCP DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

16.    **Limitations on Damages.** SCP, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Company for any claims, liabilities, or expenses relating to this Engagement ("Company Claims") for an aggregate amount in excess of the fees paid to SCP pursuant to this Engagement, except to the extent resulting from the gross negligence, bad faith or intentional misconduct of SCP or its subcontractors. In no event shall SCP, its subsidiaries or subcontractors, or their respective personnel be liable to Company for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Company Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement. In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, you agree that the aggregate liability of SCP, its subsidiaries and subcontractors, and their respective personnel for any Company Claim shall not exceed an amount that is proportional to the relative fault that the conduct of SCP and its subcontractors bears to all other conduct giving rise to such Company Claim.

17.    **Expert Witness Services.** Unless specifically included in the description of Services contained in the Engagement Letter. It is understood that the engagement of SCP and/or SCP Personnel to provide services as an expert witness, with respect to written reports, testimony or otherwise, in connection with or related to any administrative or judicial proceeding, or perform any level of related investigation (collectively, "Expert Witness Services"), is excluded from the definition of Services in this Agreement.

18.    **No Expert Advice on Securities Matters.** SCP is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any Company filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

INDEMNIFICATION

19.    **Indemnification, Generally.** As part of the consideration for SCP's agreement to furnish the Services, Company agrees to indemnify and hold harmless SCP and it's owners, partners, members, managers, officers, directors, agents, employees, consultants, attorneys and agents and any successors or assigns thereof (each, an "SCP Indemnified Party") to the fullest extent lawful from any and all claims, liabilities losses, damages, debts, judgments and/or expenses or actions (collectively, "Indemnified Claims") in respect thereof, incurred, related to or arising out of or in connection with the Services, the Engagement and/or this Agreement, including without limitation, any and all such SCP Indemnified Parties' reasonable costs, fees and expenses incurred in connection with investigating, preparing, defending, or settling any Indemnified Claim arising from or relating to such liabilities, including all of such SCP Indemnified Parties' reasonable legal fees and expenses; provided, however, that the Company shall not be responsible for any Indemnified Claim to the

4

Standard Terms & Conditions
September 14, 2017

extent, and only to the extent, that it is finally and judicially determined by a final, non-appealable Court Order, that such Indemnified Claim was caused primarily due to such SCP Indemnified Party's bad faith, willful misconduct or gross negligence. The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to SCP at common law or otherwise, (ii) shall survive the completion of the Engagement, as amended, modified or extended, and/or the termination of this Agreement, (iii) shall apply to any modification of this Agreement or revisions to the Services, and (iv) shall be binding on any successor or assign of Company and its successors or assigns.

## RELATIONSHIP OF THE PARTIES

20.    Independent Contractor.  SCP is an independent contractor under this Agreement . This Agreement is not intended to create and does not create an employment agreement. No one on behalf of SCP, nor any members, managers, directors, employees, agents, independent consultants or contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of Company unless expressly agreed to in a writing signed by SCP.  As an independent contractor, SCP will have exclusive control over the management and operation of SCP, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in the Agreement, SCP and the SCP Personnel that provide services hereunder may also provide services to other past, present or future SCP Companys in connection with unrelated matters. In addition, SCP may utilize the services of its own employees or services of qualified independent contractors to perform this Agreement in addition to the SCP Personnel.

21.    No Fiduciary Relationship. Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between the Company, including without limitation, the Company's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand; and SCP, SCP Personnel, affiliated, consultants, directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, attorneys, agents, successors or assigns, on the other hand.

22.    No Agency Relationship.  Except as set forth in this Agreement, the Services are not intended to and do not create an agency relationship between Company and SCP.

23.    No Tenancy Created.  If SCP is provided with access to or use of Company's facilities for the purpose of performing the Services, such facilities may not be dedicated solely for SCP's use and SCP will not be deemed a tenant of Company with respect to such facilities.

24.    Non-Exclusivity.  SCP may (i) provide any services to any person or entity in matters or engagements unrelated to this Engagement, and (ii) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, SCP complies with its obligations of confidentiality set forth hereunder.

## CONFLICTS

25.    Future Conflicts.  SCP is retained by new Companys in the ordinary course of its business.  As a result, SCP cannot assure that, following the completion of our internal conflict search in connection with the Engagement, a new engagement for or involving one of the Company's creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by SCP or its affiliates.  Should any potential conflict come to the attention of SCP, we will endeavor to resolve such potential conflict and will determine what action needs to be taken.  You agree that you will inform us of the parties-in-interest to this matter or of additions to, or name changes for, those parties-in-interest whose names you provided.  SCP's determination of conflicts is based on the substance of the work to be performed on an engagement as opposed to the parties involved.  It is possible that some of SCP's past, present or future Companys will have disputes with and other matters relating to Company,during the course of and subsequent to this Engagement.  As a condition of this Engagement, Company agrees that SCP may be engaged by parties with interests that are adverse to and may not be consistent with the interests of Company.  SCP reserves the right to accept engagement with other parties consistent with its internal, prior practices without objection by Company.

## CONFIDENTIALITY

26.    Duty to Maintain Confidentiality.  SCP shall keep as confidential all non-public information received in conjunction with the Engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this Engagement to the extent that such disclosure is (a) reasonably determined by the SCP to be in furtherance of its duties to Company and not otherwise in contravention of applicable disclosure rules and/or an express direction of the Company or (B) with a person that has agreed to be bound by confidentiality.  All obligations as to non-disclosure shall cease to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

27.    Disclosure.  To the extent that, in connection with this Engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The disclosing party hereby consents to the receiving party disclosing such information: (i) to subcontractors, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this Clause; (ii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iii) to the extent such information (a) is or becomes publicly available other than as the result of a disclosure in breach hereof, (b) becomes available to the receiving party on a non-confidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder.  Nothing in this Clause shall alter Company's obligations under any other Clause.  SCP, however, may use and disclose any knowledge and ideas acquired in connection with the Services, to the extent they are retained in the unaided memory of its personnel.  Further, SCP and its affiliates and related entities shall have the right to use Company's name as part of a general Company listing and as a specific citation in proposals or similar directed marketing efforts.

5

Standard Terms & Conditions
September 14, 2017

28.    Subject Tax Planning Advice. No term of this Agreement is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice"). Notwithstanding anything herein to the contrary, no provision of the Agreement shall place any limitation on Company's disclosure of any Subject Tax Planning Advice. In the event of any unauthorized reliance on any Subject Tax Planning Advice by a Third Party, Company agrees to indemnify and hold harmless SCP, its subcontractors, and their respective personnel from any and all claims of a Third-Party, liabilities, costs, and expenses including attorneys' fees and expenses as provided for in the "Indemnification" Section of the Standard Terms.

TERMINATION

29.    Termination with Notice. Any party to this Engagement may terminate the Engagement upon thirty (30) days' prior written notice to the other party(ies). Upon receipt by the non-terminating party of such written notice, SCP will stop all work immediately. Upon any termination of this Engagement, SCP shall be entitled to all incurred and unpaid fees for Services, other fees and expenses described in the Agreement.

30.    Termination at Completion of Engagement. Unless terminated sooner as set forth herein, this Agreement shall terminate upon (i) the completion of the Services and the Engagement and (ii) the payment in full of all outstanding Invoices.

MISCELLANEOUS

31.    Collection Costs. If an action or proceeding is commenced by SCP to collect any Invoice, fee, Reimbursable Expense or cost or enforce any other obligation of Company under this Agreement whether commenced during or after termination of this Agreement (an "Enforcement Action"), Company agrees to pay and reimburse SCP for all reasonable SCP Personnel time, administration costs and expenses, including, attorneys' fees, costs and expenses incurred in connection with such Enforcement Action.

32.    Misc. Fees, Expenses & Costs. SCP will be compensated for any SCP Personnel time and expenses, including, attorneys' fees, costs and expenses, that SCP may incur in connection with the Services (whether during the Engagement or after termination of this Agreement) with respect to the responding to discovery requests, subpoenas or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this Engagement) as a result of or in connection with the Services, the Engagement or this Agreement.

33.    Survival and Interpretation. All provisions which are intended by their nature to survive performance of the Services and/or the termination of this Agreement, shall survive such performance, or the expiration or termination of this Agreement and remain an independent obligation of Company and of SCP. Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, common law, or otherwise, notwithstanding the failure of the essential purpose of any remedy. Any references herein to the term "including" shall be deemed to be followed by "without limitation".

34.    Assignment. Except as provided in this Agreement, neither party may assign any of its rights or obligations hereunder (including interests, Claims or Company Claims) without the prior written consent of the other party..

35.    Severability. If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions shall remain in effect.

36.    Successors and Assigns. This Agreement shall be binding upon SCP and Company together with their respective heirs, successors, and assignees and any heir, successor, or assignee of a substantial portion of its businesses and/or assets.

37.    Entire Agreement; Bankruptcy Court Order. Subject to the terms of any order entered by the Bankruptcy Court in the Bankruptcy Case pertaining to SCP and the Engagment or the Services, this Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the parties. This Agreement replaces and supersedes any previous proposal, draft letter of engagement, communication (oral or written), undertaking, representation, or correspondence – whether written or oral, regarding the Services.

38.    Limited Disclosure of Engagement. Notwithstanding anything herein to the contrary, SCP may reference or list the Company's name and/or logo and /or a general description of the Services in SCP's marketing materials, media, social media , website or in any disclosure to a court of law as appropriate.

39.    Force Majeure. No party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

40.    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. This Agreement may be executed by facsimile signatures or signatures forwarded by email.

41.    No Waiver. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a direct or indirect waiver thereof.

42.    Waiver of Trial by Jury. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT AND THE SERVICES.

6

Standard Terms & Conditions
September 14, 2017

43.    Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California (without giving effect to the choice of law principles thereof).  Any action based upon or arising out of this Agreement shall be brought and maintained exclusively in any state or federal court, in each case located in Los Angeles County, the State of California.  Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.

[Remainder of page left blank intentionally]

# EXHIBIT "B"

## Winston Mar

**Winston Mar** is a Partner and Managing Director of SierraConstellation Partners and has over 15 years of experience providing advisory and interim management services to struggling and distressed companies.  He is skilled in strategic direction, creditor negotiation and productivity improvements, and he is experienced in a wide variety of industries, including advertising and marketing, energy, entertainment, computer products and services, food and agricultural products, consumer electronics, manufacturing, and restaurants.

Winston has assisted numerous companies with their restructuring efforts, both out-of-court and during Chapter 11 proceedings and has served in a variety of senior level positions including Chief Restructuring Officer (CRO) and Chief Executive Officer (CEO).

Prior to SCP, Winston was a Managing Director at CRG Partners where he worked on numerous high level cases including Pilgrim's Pride which received the "TMA Turnaround of the Year" award in 2010.

Winston holds a bachelor's degree in accounting from the University of Southern California and an MBA from UCLA Anderson School of Management. Winston is a CPA, who is licensed in California.

### NOTABLE ASSIGNMENTS

Provided interim CFO services for an electronic products company during its Chapter 11 proceedings, which resulted in a successful sale.

Provided an assessment and ran a sale process on a $225 million, 82-store restaurant chain which resulted in the sale of the company to a private equity fund.

Financial advisor to a raisin producer where he established operational improvement that allowed the company to refinance at a lower interest rate.

CEO of a sun-dried tomato processor and distributor, where he arranged the restructuring, stabilized the restructured entity and subsequently sold the company to a strategic buyer.

Chief Restructuring Officer (CRO) of a 26 store franchisor owned restaurant chain which resulted in the sale of various franchisees providing the franchisor with a continuing revenue stream.

## Jeff Nerland

**Jeff Nerland** is a Senior Director at SierraConstellation Partners and has more than 30 years of senior financial management and advisory experience for underperforming companies, both domestically and internationally.  He is particularly skilled in leading mergers & acquisitions, operational and financial restructurings and business planning to improve stability and profitability for clients.  Jeff has experience in a wide variety of industries, including aerospace, contracting, distribution, home furnishings, transportation, manufacturing, real estate and retail.

Prior to joining SCP, he was a partner at CRG Partners where he held several senior level positions including chief financial officer and chief restructuring officer, successfully improving revenue, cash flow and profitability.

Mr. Nerland received a bachelor's degree in business management from Indiana University. He earned a master's degree in finance, graduating with honors from the University of Southern California (USC). During his time at USC, he taught strategic planning in the Undergraduate School of Business.

### NOTABLE ASSIGNMENTS

Advisor to Bashas' supermarket chain, a $2 billion company, to identify actions to reduce costs, improve EBITDA and generate cash; developed a comprehensive operational plan which improved EBITDA by over $64 million and generated an additional $22 million of cash.

Prepared a 635-store national retail chain for Chapter 11 filing. Developed the business plan and negotiated with official committees on behalf of the chain, which was operating with pre-petition revenue of $550 million.  Gained use of cash collateral; negotiated a $20 million DIP loan and a $60 million exit financing package. Led the financial and accounting function for six months as interim CFO. Developed cost reduction programs (reducing corporate overhead by 50%), evaluated individual stores (closing 360 stores), and created a MIS strategic plan. The company emerged from Chapter 11 in 21 months. Advised management in merger discussions with strategic partners and potential equity investors.  The company emerged from Chapter 11 and was acquired by a major competitor.

# EXHIBIT "C"

1  TIMOTHY J. YOO (SBN 155531)
   EVE H. KARASIK (SBN 155356)
2  JULIET Y. OH (SBN 211414)
   JEFFREY S. KWONG (SBN 288239)
3  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
   Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
5  Email: tjy@lnbyb.com, ehk@lnbyb.com, jyo@lnbyb.com, jsk@lnbyb.com
6
7  Attorneys for Chapter 11 Debtor
   and Debtor in Possession
8
9
10              **UNITED STATES BANKRUPTCY COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12                   **LOS ANGELES DIVISION**

13  In re                                ) Case No. 2:17-bk-17292-VZ
                                         )
14  CORNERSTONE APPAREL, INC.            ) Chapter 11
                                         )
15              Debtor.                  )
                                         )
16                                       ) **NOTICE OF DEBTOR'S**
                                         ) **APPLICATION TO EMPLOY**
17                                       ) **SIERRACONSTELLATION**
                                         ) **PARTNERS, LLC AS FINANCIAL**
18                                       ) **ADVISOR TO DEBTOR PURSUANT**
                                         ) **TO 11 U.S.C. §§ 327 AND 330**
19                                       )
                                         )
20                                       )
                                         ) [No Hearing Required – Local Bankruptcy
21                                       )          Rule 2014-1(b)]
                                         )
22                                       )
                                         )
23                                       )
                                         )
24                                       )
                                         )
25                                       )
                                         )
26  ─────────────────────────────────── )

27

28

                                    1

**PLEASE TAKE NOTICE** that Cornerstone Apparel, Inc.  d/b/a Papaya Clothing, a California corporation and the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), has filed an application (the "Application") for Court approval of its employment of SierraConstellation Partners, LLC ("SCP") as its financial advisor, effective as of September 5, 2017, upon the terms and conditions set forth in the Application and that certain written engagement agreement between the Debtor and SCP (the "Engagement Agreement"), in substantially the form attached as **Exhibit "A"** to the Declaration of Winston Mar annexed to the Application.

**PLEASE TAKE FURTHER NOTICE** that the Debtor seeks to employ SCP as its financial advisor to render the following types of professional services within the context of its pending Chapter 11 case:

- Evaluate near-term business plan/financial forecast;
- Evaluate and/or assist in developing four-wall (store-level) contribution analysis;
- Assist with evaluating store footprint and store closure scenarios;
- Perform analysis of current inventory composition;
- Evaluate and/or assist in developing a liquidation analysis;
- Provide advice on restructuring alternatives, including but not limited to, any asset sales or a plan of reorganization;
- Render such other restructuring, general business consulting or other assistance as may be requested; and
- Assist in the preparation of a plan of reorganization.

**PLEASE TAKE FURTHER NOTICE** that SCP will bill its time for its representation of the Debtor on an hourly basis in accordance with SCP's standard hourly billing rates, and will seek reimbursement of its reasonable out-of-pocket expenses incurred in connection with its representation of the Debtor, including, without limitation, expenses related to airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs.

**PLEASE TAKE FURTHER NOTICE** that SCP has not been paid a retainer or any other monies by the Debtor or any other entity in connection with its proposed representation of the Debtor in this bankruptcy case.  SCP has not received any lien or other interest in property of the Debtor or of a third party to secure payment of SCP's fees or expenses incurred in this bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that, to the best of SCP's knowledge and based upon the Declaration of Winston Mar submitted in support of the Application, SCP and all professionals associated with SCP who expect to render services in the Debtor's case are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, do not hold or represent an interest adverse to the Debtor's estate and, other than as set forth herein, do not have any connections with the Debtor, creditors of the Debtor, or any other party in interest in the Debtor's case, or each of their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.  Although Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor in this case, has worked with SCP on other matters which are unrelated to the case herein, SCP respectfully submits that its professional relationship with LNBYB in connection with other unrelated matters should not preclude the Debtor's employment of SCP in this case as both LNBYB and SCP will be able to represent the Debtor in a professional and unbiased manner.

For disclosure purposes only, Mr. Nerland of SCP served as chief restructuring officer for the debtor in the bankruptcy case of Naartjie Custom Kids, Inc. (Bankr. D. Utah, Case No. 2:14-bk-29666), where Ron Tucker from Simon Property Group Texas LP ("Simon") was chairman of the official committee of unsecured creditors.  Further, prior to when Mr. Nerland joined SCP, Mr. Nerland and Mr. Tucker had previous contacts in the bankruptcy case of Merksamer Jewelers.  Neither of these bankruptcy cases is related to the Debtor's bankruptcy case.  While SCP believes that the foregoing has no impact on the proposed representation herein, such disclosure is being made in an overabundance of caution.

**PLEASE TAKE FURTHER NOTICE** that any request for a copy of the Application must be made in writing to Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation

1  Blvd., Suite 1700, Los Angeles, California 90067, Attention: Eve H. Karasik, Tel: (310) 229-

2  1234, Fax: (310) 229-1244, Email: EHK@LNBYB.com.

3      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 2014-

4  1(b)(3)(E), any objection to and request for a hearing on the Application, in the form required

5  by Local Bankruptcy Rule 9013-1(f)(1), must be filed and served on the Debtor, LNBYB and

6  the Office of the United States Trustee within fourteen (14) days after the date of service of this

7  Notice plus three (3) additional days if served by mail, electronically, or pursuant to Rule

8  5(b)(2)(D), (E), or (F) of the Federal Rules of Civil Procedure and Rule 9006 of the Federal

9  Rules of Bankruptcy Procedure.

10      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 2014-

11  1(b)(4), if no objection and request for a hearing on the Application is timely filed and served,

12  the Debtor will promptly lodge a proposed order approving the Application.

13

14  Dated: September 18, 2017          CORNERSTONE APPAREL, INC.

15

16                                   By:_____*/s/ Jeffrey S. Kwong*_____
17                                        TIMOTHY J. YOO
                                          EVE H. KARASIK
18                                        JULIET Y. OH
                                          JEFFREY S. KWONG
19                                        LEVENE, NEALE, BENDER, YOO
                                                  & BRILL L.L.P.
20                                        Attorneys for Debtor and
21                                        Debtor-in-Possession

22

23

24

25

26

27

28

4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **DEBTOR'S APPLICATION TO EMPLOY SIERRACONSTELLATION PARTNERS, LLC AS FINANCIAL ADVISOR TO DEBTOR PURSUANT TO 11 U.S.C. §§ 327 AND 330; DECLARATION OF WINSTON MAR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 18, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Dustin P Branch     branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com
- John H Choi     johnchoi@kpcylaw.com, christinewong@kpcylaw.com
- Richard T Davis     rdavis@cafarocompany.com, lspahlinger@cafarocompany.com
- John P Dillman     houston_bankruptcy@publicans.com
- Oscar Estrada     oestrada@ttc.lacounty.gov
- Scott Ewing     contact@omnimgt.com, sewing@omnimgt.com;ecf@omnimgt.com;docketalarm-ecf-cacb-5715976304852992@inbound.docketalarm.com
- Ronald E Gold     rgold@fbtlaw.com, joguinn@fbtlaw.com
- Courtney J Hull     bk-chull@oag.texas.gov, sherri.simpson@oag.texas.gov
- Clifford P Jung     clifford@jyllp.com, victoria@jyllp.com;karill@jyllp.com
- Eve H Karasik     ehk@lnbyb.com
- John W Kim     johnkim@jwklawgroup.com
- Jeffrey Kurtzman     kurtzman@kurtzmansteady.com
- Jeffrey S Kwong     jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Dare Law     dare.law@usdoj.gov
- Scott Lee     slee@lbbslaw.com
- Noreen A Madoyan     Noreen@MarguliesFaithLaw.com, Helen@MarguliesFaithlaw.com;Victoria@MarguliesFaithlaw.com;Brian@MarguliesFaithlaw.com
- Monserrat Morales     mmorales@marguliesfaithlaw.com, Helen@marguliesfaithlaw.com;Victoria@marguliesfaithlaw.com;Brian@marguliesfaithlaw.com
- Kevin M Newman     knewman@menterlaw.com, kmnbk@menterlaw.com
- Juliet Y Oh     jyo@lnbrb.com, jyo@lnbrb.com
- Kristen N Pate     ggpbk@ggp.com
- Christopher E Prince     cprince@lesnickprince.com, jmack@lesnickprince.com;mlampton@lesnickprince.com;cprince@ecf.courtdrive.com
- Lovee D Sarenas     lovee.sarenas@lewisbrisbois.com
- Benjamin Seigel     bseigel@greenbass.com, rholland@greenbass.com;ecfnotification@greenbass.com
- Michael A Shakouri     mshakouri@goodkinlynch.com, paralegal@goodkinlynch.com
- Ronald M Tucker     rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Ashley R Wedding     awedding@fabozzimillerlaw.com, dsandoval@fabozzimillerlaw.com
- Elizabeth Weller     dallas.bankruptcy@publicans.com
- Timothy J Yoo     tjy@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                    **F 9013-3.1.PROOF.SERVICE**

**2.  SERVED BY UNITED STATES MAIL**: On **September 18, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Vincent P. Zurzolo
United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street, Suite 1360 / Ctrm 1368
Los Angeles, CA 90012

Cornerstone Apparel, Inc.
5807 Smithway Street
Los Angeles, CA 90040

Kelly L Morrison
United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

☐  *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 18, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 18, 2017 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.